## Commonwealth v. Sams et al.

*Leroy K. Donaldson*, district attorney, for Commonwealth.

*Sherman K. Levine*, for defendants.

BRAHAM, P. J., December 3, 1947.—Defendants, Samuel Sams and Leonard D'Antonio, have been convicted of robbery. They have made motions in arrest of judgment and for a new trial.

The facts concerning the robbery are simple. On Thursday night, December 12, 1946, at about 10:15 p.m. two men wearing red hoods similar in shape to those of the Ku Klux Klan, each armed with a revolver, entered the retail grocery store of John S. Wasilewski and Rose Wasilewski, his wife, at 1901 Hamilton Street, New Castle, Pa. They demanded and received the contents of the cash register at the point of their revolvers. When Mr. Wasilewski appeared they fled. Mr. and Mrs. Wasilewski, their daughter

Rose, 10 years old, and one customer, Albert Crevensten, were the only persons in the store.

The Commonwealth produced evidence that Samuel Sams, one of the defendants, later in the evening was found by some of his fellows lying down in the seat of an automobile. He rode with them for a few blocks toward his home. During this trip when a police siren sounded he said he hoped the police would not catch his buddy.

Defendant Samuel Sams was arrested on March 18, 1947. His arrest was a part of a large scale operation by the State police during which eight young men were arrested. At about 6 p.m. Sams was taken to the Oak Street barracks in New Castle, where he was placed in another car and taken to the barracks of the State police at Butler, Butler County, Pa., a distance of about 30 miles. He was questioned that night until about midnight and again on Wednesday. The questioning took place upstairs in a room where he was surrounded by three or four police officers who had guns. Sams testified that he was placed under a strong light, was abused, threatened and hung up by his handcuffs. These allegations are denied by the Commonwealth's witnesses. On Wednesday evening Sam Sams was taken to Sharon, Mercer County, Pa., where he was lodged in the county jail overnight. This is a distance of about 50 miles. On Thursday morning he was taken from Sharon to Mercer, Mercer County, Pa., a distance of about 15 miles, and sent back to the Butler barracks, a distance of about 35 miles. On Thursday he was questioned again. On Friday morning he was taken to Grove City in Mercer County, a distance of about 25 miles, whence he was taken back to Butler and questioned further. On Friday he confessed to his part in the robbing of the Wasilewski store. He confessed at first orally and later he signed a written confession.

The manner of the signing of the written confession, which is Commonwealth's Exhibit 6, is important. On

this occasion defendant Sam Sams, three officers and a number of other young prisoners were around this round table. The written confession of Sam Sams was read in his presence, was signed by him, and was signed by all of the other young men and by the police officers. The other young men, six in all, confessed to a variety of other crimes. Their written confessions were read and signed. The striking and unusual thing is that defendant Sam Sams admitted his part in seven robberies other than the one now before us.

Defendant Leonard D'Antonio was not arrested until Friday, March 21, 1947, in the evening. He was not known to be implicated in any of the robberies in question until the oral confession of Sam Sams implicated him. Upon his arrest he was taken to the substation of the Pennsylvania State Police, where he was kept for about an hour; then he was taken in an automobile to Ellwood City in this county, a distance of about 15 miles from New Castle, where he was lodged all night. On Saturday morning, March 22nd, he was taken to the Butler barracks. He was questioned that day and late in the evening of March 22nd. He says there were three officers and a number of defendants in the various cases in the room. Sam Sams' confession was read and signed by him. At the conclusion of this confession D'Antonio said that Sam Sams must have a good imagination or a wonderful imagination or words to that effect. He refused to sign the confession and then was taken to the city jail in Rochester, Beaver County, Pa.

Defendant Sam Sams and five other young men who confessed to various offenses have been sentenced and are serving in penal institutions. The pending case is the only case against Leonard D'Antonio.

The reason most strenuously urged in support of the motion for a new trial is the admission of the confessions of Samuel Sams in evidence. The contention is that these confessions were inadmissible under the

provision of the Federal Constitution which provides that no person shall be compelled to give evidence against himself. Here the case of Sam Sams must be examined separately from the case against D'Antonio for they stand on a different footing.

The Pennsylvania rule as to confessions has long been well settled. Where there is a conflict of testimony as to whether force or duress was used to secure a confession it is a question of fact for the jury as to whether or not the confession was voluntary: Commonwealth v. Lockard, 325 Pa. 56; Commonwealth v. Spardute, 278 Pa. 37; Commonwealth v. Brown, 309 Pa. 515. It would further seem under the Pennsylvania rule that the obtaining of a confession only after a long series of prolonged questioning would not alter the rule previously stated.

Heretofore it has been regarded as the rule that the Pennsylvania courts were the judges as to whether confessions offered therein were admissible. This conclusion has been challenged by a series of recent cases in the Supreme Court of the United States. In White v. Texas, 310 U. S. 530, 84 L. ed. 1342, defendant was arrested without a warrant and was held for five or six days in jail without benefit of counsel or an opportunity to consult friends, during which time it was averred and not explicitly denied that defendant, an illiterate farmhand, was taken on a number of occasions to the woods at night. Finally he was interrogated continuously for four or five hours by the officers. The Supreme Court of the United States reversed the conviction which had been affirmed by the Supreme Court of Texas and held the confession to be inadmissible as a matter of law. Ward v. Texas, 316 U. S. 547, 86 L. ed. 1663, is a similar case. Defendant was arrested for murder without a warrant, was told mob violence threatened, was carried from place to place without being arraigned and finally confessed. The conviction was reversed. In Chambers et al. v. Florida, 309 U. S.

227, 84 L. ed. 716, defendant was arrested without a warrant; he was held from May 14th to May 20th, during which time he was subjected to continuous questioning and cross-examination. He was never permitted to confer with relatives and friends. Therein the Supreme Court said: "use by a state of an improperly obtained confession may constitute a denial of due process of law as guaranteed in the Fourteenth Amendment". In Ashcraft et al. v. Tennessee, 322 U. S. 143, 88 L. ed. 1192, the prisoner was first arrested on the night of the murder and on June 14th was rearrested. He was quizzed by officers working in relays with a light overhead from Saturday at 7 o'clock p.m. until Monday at 9 o'clock a.m. He suffered from lack of sleep. The court held the confession inadmissible because of the coerced confession. In United States v. Mitchell, 322 U. S. 65, 88 L. ed. 1140, defendant was not promptly arraigned but he confessed promptly. Therefore since the confession preceded any prolonged and irregular imprisonment, the confession was held to be good.

In the case of Malinski v. New York, 324 U. S. 401, 89 L. ed. 1029, the Supreme Court of New York was reversed because of the admission of a confession obtained under what was denounced as improper circumstances. In that case defendant was arrested on his way to work Wednesday, February 23, 1942; he was kept naked until 11 a.m. of that morning. At 6 o'clock of that day he confessed. He was further questioned on the 24th and 25th. He was taken to the scene of the crime, and on Monday, the 26th, he was taken to a garage. On Tuesday, the 27th, he signed a written confession at the police station. He was then put in a cell and arraigned. Up to this time he had been living in a hotel. The admission of the confession was held to be error, the court saying: "There was not in this case a fair trial of issues vital to determination of guilt or innocence."

In the present case the trial judge submitted to the jury the question whether the confession of Sam Sams was voluntary or was obtained by some kind of coercion. The verdict establishes that it was a voluntary confession. This case is not ruled by the Federal cases cited, although cognizance must be taken of the outcome of the undoubted period of illegal confinement of defendant and the persistent questioning which he underwent during that time.

At the very foundation of the rule, however, is the idea that when there has been such oppressive conduct that it is impossible to determine whether the confession is dictated by a desire to tell the truth or to escape from the conduct, the confession must be rejected. One common element in many of these Federal cases is the failure to arraign promptly. The conduct of the officers in the present case merits condemnation in this particular. Defendant was not arraigned; he was carried from county to county and it was impossible to know exactly where he was. To be sure, the excuse is advanced that a number of cases were being investigated at the same time. The men were taken from one place to another to be confronted with other suspects. Within bounds this is permissible. Nevertheless the law requires a prompt arraignment. In the case of United States v. Mitchell, 322 U. S. 65, supra, this failure to arraign promptly was relied upon in an attempt to have the admission of the confession declared illegal, but there the confession came before any prolonged period of detention. The court declined to throw out the confession merely because there had been illegal detention.

In the present case there was, as has been said, illegal detention; there was sufficient and prolonged questioning by a number of officers. However, at the end of all this procedure defendant, Sam Sams, confessed not to one but to the commission of seven felonies. For six of these sentence was imposed. Are we to say that

the conduct which produced six true confessions, none of which he has ever attempted to deny, may produce another which must be declared incompetent as matter of law? We apprehend not. Furthermore, when the written confession of Sam Sams was actually signed by him he was not alone; five or six of his comrades were seated at the same table; three officers were there. If there had been in the preceding hours harsh and oppressive conduct, the sort of thing from which the founders of the Constitution sought to escape when they declared that no man could be compelled to give evidence against himself, at this large table there was ample opportunity for him to escape from oppression. He might then have denied his confession; there would have been many ears to hear and many tongues eager to relate. Nothing of this sort happened. He signed his confession and his fellows at the table with him.

For these two reasons the confession of Sams may not be excluded; it was signed in the presence not only of officers but of a number of others (Commonwealth v. Chavis, 357 Pa. 158) and he confessed at the same time to a number of crimes which he clearly committed.

The case as to Leonard D'Antonio is different. He confessed nothing himself. The only thing sought to be shown against him is an admission by silence. The nature of this type of evidence is indicated in Commonwealth v. Vallone, 347 Pa. 419, 421, in this language:

"The accusatory statement, being hearsay, is not admissible as evidence in itself of the facts which it asserts, but merely to show what the charges were to which defendant offered no denial; its probative force is derived, not from the credibility of the accuser, but from the silence of the accused in response to it."

The problem arises in the present case in this fashion. At the round table conference when Sams' confession was read in D'Antonio's hearing the defendant

said nothing except "Sammy Sams has a good imagination or Sammy Sams has a wonderful imagination". The trial judge ruled that this was competent evidence against D'Antonio. In determining whether or not there was any admission by silence the method of procuring the statement from Sams is entirely unimportant. It does not matter whether they were induced by improper questioning and the failure promptly to arraign or not. And on the contrary the answers which defendant, D'Antonio made when the statements were read are of the utmost importance. On this point we believe the trial judge was in error. There was a sufficient denial to take the case out of the rule of admission by silence.

The much controverted statement that "Sammy Sams must have a wonderful imagination", if standing alone, would not require the statement to be submitted to the jury. However, a survey of all of the evidence on the point indicates D'Antonio's attempt throughout to make a denial. It was clear from the following testimony with reference to the round table conference:

"Q. What happened then?

"A. They told me to take a seat at the head of the table; I was seated opposite Officer Rice; they said that this alleged confession would be read, and after it was read we were to sign as witnesses; I said, immediately spoke up and said I wasn't signing anything because I was not guilty of anything. The lieutenant in charge said it was entirely up to me; so the confessions were read; the lieutenant in charge interrupted several times, saying that the big fellow at the head of the table was being left out of it, and at the same time I replied I should be, because I didn't do anything.

"Q. And did they read Sammy Sams' alleged confession?

"A. Yes, sir; they did.

"Q. At the close of that, state whether or not they asked you anything about it?

"A. At the close of the statement they asked me nothing. I said myself, Sammy Sams must have a wonderful imagination."

.    .    .    .    .    .    .    .    .

"Q. Did they later ask you to sign the confession or alleged confession?

"A. They did, and I refused, I said I wouldn't sign anything because I hadn't done anything."

From this it appears that D'Antonio himself made a denial before the confession was read. At one or more times during the reading of the various confessions defendant replied that he had done nothing. When the reading of the Sams' statement was completed he said "Sammy Sams had a wonderful imagination" and when, immediately thereafter, he was asked to sign the statement he said he would sign nothing because he had not done anything. In our opinion this is as much as one individual confronted by such a situation should be required to do. Therefore the submission to the jury in the case against Leonard D'Antonio of the alleged admission by silence was erroneous. In Commonwealth v. Mazarella, 279 Pa. 465, 470, it is held that defendant need not deny the statements of an accomplice every time he was asked; it was sufficient that he had denied them once.

Both of the defendants argue that the court's charge on identity was inadequate, misleading and erroneous. Commonwealth v. Bird, 152 Pa. Superior Ct. 648; Commonwealth v. Reid, 123 Pa. Superior Ct. 459, 465, and Commonwealth v. Sharpe, 138 Pa. Superior Ct. 156, are cited to this end. In the Bird case the witness refused to identify the accused at the trial although she had done so previously. Evidence of the identification at a previous hearing was admitted. This was held to be error. In Commonwealth v. Sharpe, the man to be identified was masked; no witness at the trial testified that he could positively identify defendant as the robber. In this connection the court said (p. 160) :

" 'No class of testimony is more uncertain and less to be relied upon than that as to identity and, where great doubt is cast upon it by the witnesses themselves, there is a double reason for submitting it with great caution.' "

The argument in the present case has proceeded as though no instructions on the subject of identification were given. This is found not to be the fact. At three times in the charge of the court the attention of the jury was directed to the problem of identification and they were instructed as to how difficult it is to identify a person, in particular, how difficult it is to identify a person without seeing his face. Their attention was called to the necessity for some acquaintance with the person. Although the word "caution" was not used, it is perfectly clear that the purpose and intent of the instructions of the court were to caution the jury regarding this type of evidence. The points submitted by defendant, particularly the thirty-third point, were quite erroneous. It asks the court to condemn out of hand the evidence against D'Antonio. It was not limited to general evidence on the subject of identification. Furthermore, the point stated "any doubt as to the identity must be resolved in favor of Leonard D'Antonio". This is undoubtedly bad law. All the other points submitted by defendant asked only for the benefit of a reasonable doubt. This point demands the benefit of all doubt.

The case against Samuel Sams thus stands upon the partial identification of the three Wasilewskis, the complete, although difficult identification by Mr. Crevensten, the oral admission and the written confession of Sam Sams which has been previously discussed. These again are fortified by the evidence of the witness, Thomas A. Natale, whose testimony shows the defendant Sam Sams on the night of the robbery to have been fleeing from the scene; his every act, the act of a guilty man who was seeking to evade the consequences

of his act. After a careful survey of the evidence we find no reason for granting a new trial against Samuel Sams and certainly no reason for arrest of judgment.

The case against Leonard D'Antonio does not rise so high. The case was submitted to the jury on the theory that the three items of evidence, the partial identification by the three Wasilewskis, the complete identification by the witness Crevensten, and the admission by silence made out a case proper for submission to the jury. The result of our present inquiry has been to determine that the admission by silence was not a justifiable inference from the evidence. The conclusion is inevitable that this question should not have been submitted to the jury. At once the further problem arises as to whether sufficient evidence remains to justify the verdict of guilty, in which case the verdict of guilty rests entirely upon the evidence concerning identification. Mr. and Mrs. Wasilewski and Rose were very candid in their statements that they could not identify defendant without seeing his face. Mr. Crevensten appealed to us as quite honest and sincere; his testimony as to a manner of walking and carriage was quite convincing, especially when defendant was seen in the court room. Nevertheless the face of defendant, D'Antonio was covered. One fat man may walk like another. Crevensten is not shown to have seen defendant run in the court room yet that is the thing which attracted his attention on the night of the robbery. All in all we are not satisfied that this evidence is sufficient to support the present verdict of guilty of robbery. Accordingly, we believe that a new trial should be granted.

The motion in arrest of judgment is a motion which properly brings before the court only the record and not the evidence. Nothing is presented to us by the motion in arrest of judgment which would justify entering judgment for defendant. The case, however, does require the granting of a new trial against D'An-

tonio. Certain other questions were raised such as the effect of the prior conviction but they do not require examination in view of our conclusion regarding the admission by silence. Whether the district attorney has enough evidence to justify a second trial of the issue against D'Antonio is a matter for him to determine. Sufficient to say that at the present time we find the evidence to require the following

### *Order*

Now, December 3, 1947, the motions in arrest of judgment and for a new trial as to Samuel Sams are each severally overruled and refused. The motion in arrest of judgment as to Leonard D'Antonio is refused and the motion for a new trial for Leonard D'Antonio is granted.