Tony A. COLEMAN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17444.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 15, 1963.

Decided April 19, 1963.

12. 60 Stat. 238 (1946), 5 U.S.C.A. § 1003 (b).

involved, the first dealing with an oral admission after arrest upon adequate probable cause.[1] The other had to do with earlier and totally unrelated offenses as to which the police had no evidence of complicity by the appellant except oral admissions and a confession elicited during interrogation after a time when he should have been presented before a committing magistrate.

■ The "seventh count" charged an attempted housebreaking which took place at 12:25 A.M. on February 24, 1961. The offense occurred practically in the presence of an officer who placed the appellant under arrest and took him to the precinct. There, as will appear, the appellant admitted his purpose to gain admittance to a delicatessen store at 944 Eye Street, N. W. The appellant argued in the District Court and here that his oral admission should not have been received in evidence against him [2] for he was not presented before the Commissioner until about 10 o'clock the next morning.

The other phase, the real heart of the case, involves admissions and a written confession which predicated counts one through six, which, respectively, charged housebreaking and larceny, each pair of counts relating to offenses which occurred on February 16, 19, and 21, 1961. After the appellant had been brought to the precinct on the attempted housebreaking charge, two detectives who were out in a cruiser were sent for. They took the appellant to a back room where they interrogated him. Their purpose was to ascertain appellant's possible complicity in certain "open" cases, burglaries in which, it was said, a common "technique" or pattern had been followed. The Government has argued here that court decisions applying the exclusionary rule in cases where there has been unnecessary delay in presenting the ac-

Mr. John W. Kern, III, Washington, D. C., with whom Mr. Cecil A. Beasley, Jr., Washington, D. C. (both appointed by this court) was on the brief, for appellant.

Mr. William C. Weitzel, Jr., Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before WASHINGTON, DANAHER and BURGER, Circuit Judges.

DANAHER, Circuit Judge.

This case presents an attack upon rulings by the trial judge as to the admissibility of evidence. Two phases are

1. The charge of attempted housebreaking on this aspect of the case was set forth in the "seventh count" of the indictment.

2. The point has not been seriously urged for the appellant has served the sentence

of one year imposed on this count. On brief he contends importantly that "in the alternative, the judgment of conviction on counts one through six should be reversed."

cused before a magistrate, apply only to "one-of-a-kind" situations. It is contended that the detectives here might properly have been "concerned that perhaps appellant was confused and had been confessing to some of these housebreakings when in fact he did not commit them." They had been committed in the same area in which the appellant had been arrested. They were said to have possessed certain similarities in execution and in the type of items stolen. We do not doubt that the police had a genuine interest in what appellant might have to say—but they had no evidence against him respecting counts one to six. We turn to more minute details.

About 12:25 A.M. on February 24, 1961, an officer observed the appellant who was then standing in the doorway of a delicatessen store. As the officer approached, appellant moved away some 10 to 15 feet, but by then, the officer could obtain a view of the doorway. He observed that a padlock had been knocked off and was hanging on one side of the door. He asked the appellant what he was doing in the neighborhood and was told that appellant was waiting for a friend. The officer then perceived an iron bar protruding from appellant's overcoat pocket. Appellant explained that he carried the 18-inch tire iron for self-protection. The officer arrested the appellant and searched him, finding in his pocket a pair of pliers and a screw driver. Appellant was then taken to the precinct, where the arresting officer reported to a sergeant. The arresting officer did not question the appellant at the precinct, but placed him in a "license room." It seems clear enough that Coleman thus, in light of such uncontroverted evidence, had not been brought to headquarters that a "process of inquiry" might be pursued to elicit "damaging statements to support the arrest and ultimately his guilt."[3]

But with the appellant in custody, an officer at headquarters sent for two detectives "to interrogate the defendant," as a Government witness testified. Apparently they were in charge of the investigation into the three earlier "open" cases. They arrived about 1 A.M., and took Coleman to their office in the rear of the precinct. While questioning appellant to gain information for a "line-up" sheet as to the attempted housebreaking for which he had been arrested, a detective asked Coleman if he had attempted an entrance to the delicatessen. As the appellant at first denied complicity and the occurrence was readily susceptible to quick verification, one of the detectives went out to the store and returned with paint samples and chips taken from the door, and confronted Coleman.[4] Appellant's original denial then became "within a few minutes,"[5] a frank admission after he saw the samples of paint and wood chips which, the detectives told appellant, were to be sent to the F.B.I. laboratory for purposes of comparison with particles found on the jimmy. The appellant stated "he was trying to break in 944 Eye St." Appellant's oral admission simply supplemented what was already known to, and at trial, clearly established by the testimony of the officer. We have not been shown unlawful police "purpose" or such a lack of "circumstances of legality"[6] as to require reversal on this aspect of the case.

3. Mallory v. United States, 354 U.S. 449, 454, 77 S.Ct. 1356, 1359, 1 L.Ed.2d 1479 (1957).

4. Trilling v. United States, 104 U.S.App. D.C. 159, 163, 260 F.2d 677, 681 (en banc, 1958).

5. As phrased in United States v. Mitchell, 322 U.S. 65, 69, 64 S.Ct. 896, 88 L.Ed. 1140 (1944); and see Naples v. United States, 113 U.S.App.D.C 281, 283, 307 F.2d 618, 620 (en banc, 1962).

6. United States v. Mitchell, supra note 5, 322 U.S. at 70, 77 S.Ct. at 898; Turberville v. United States, 112 U.S.App.D.C. 400, 405, 406, 303 F.2d 411, 416, 417, cert. denied, 370 U.S. 946, 82 S.Ct. 1607, 8 L. Ed.2d 813 (1962); United States v. Vita, 294 F.2d 524, 533 (2 Cir. 1961), cert. denied, 369 U.S. 823, 82 S.Ct. 837, 7 L. Ed.2d 788 (1962).

But that is not the end of the matter, for the interrogation went forward. The appellant was not then brought before a committing magistrate. The record shows that trial counsel developed that a Municipal Judge could have been called to conduct a preliminary hearing. An Assistant United States Attorney was available for nighttime appearances. But the police did not call one of the prosecutors nor was a judge notified. With ample evidence upon which to present Coleman, the detectives did not even "book" him—then, or throughout the night.[7]

Instead, it develops, the detectives really were interested in ascertaining whether or not the appellant was implicated in three other housebreaking episodes which had occurred on February 16, February 19 and February 21, 1961. All of these "open" cases involved small restaurants in the neighborhood, and in each, access had been gained by the use of a jimmy, such as the appellant's tire iron. The detectives questioned the appellant over the next hour or so. He finally admitted that he had broken into the premises involved, after which the police took him out of the precinct and put him into a police car that together they might view the scenes of the offenses in question. Thereafter the entire party returned to the precinct about 3:30 A.M. Over the next hour or so, one of the detectives typed up the appellant's confession, and Coleman signed it.

It would seem unnecessary in view of the Mallory opinion and our own subse-quent decisions, that we now do more than point to what the Supreme Court has said is the "scheme for initiating a federal prosecution." [8]

First, wrote Mr. Justice Frankfurter, there must be no arrest on mere suspicion but only upon probable cause. Next, Rule 5 requires the prompt [9] presentation of the accused before a committing magistrate. The accused must be advised of his rights as the Rule provides, and particularly he must be warned that "he is not required to make a statement and that any statement made by him may be used against him." The presence or the absence of "judicial caution" may often be the touchstone [10] by which the courts ultimately are to determine whether or not confessions are to be received in evidence at the trial.

Upon the basis of the distinction previously discussed, the conviction on count seven will be affirmed.

As to counts one to six, inclusive, many hours after the initial brief delay, the appellant was presented before the Commissioner, some time after 10 A.M. During that period of protracted and unnecessary delay, the appellant's oral admissions and confession as to these counts were elicited from him, and at the trial, were received over the objection of trial counsel. The objection should have been sustained, and because it was not, the conviction on these counts must be reversed.

Affirmed in part.

Reversed in part.

---

7. As to the pattern followed, see Naples v. United States, Part II(b), supra note 5, 113 U.S.App.D.C. at 284, 307 F.2d at 621.

8. Mallory v. United States, supra note 3.

9. Rule 5(a) calls for presentation "without unnecessary delay" before the nearest available committing magistrate. Metropolitan Police derive their power of immediate arrest without a warrant from D.C.Code, § 4-140 (1961). That section commands that the officer "*shall immediately*, and *without delay*" (emphasis added) bring his prisoner before the proper court. The Government at argument took the position that the quoted language must be read in light of Rule 5 and the Mallory decision. We do not pass upon that claim, for here the detectives did not comply with Rule 5, much less with the more narrow requirements set forth in our Code.

10. Before Mallory, our rule and that prevailing in many federal courts rested upon a different premise. See discussion and citations in Tillotson v. United States, 97 U.S.App.D.C. 402, 403–404, 231 F.2d 736, 737–738, cert. denied, 351 U.S. 989, 76 S.Ct. 1055, 100 L.Ed. 1502 (1956); cf. Mallory v. United States, 98 U.S.App. D.C. 406, 408, 236 F.2d 701, 703 (1956).

WASHINGTON, Circuit Judge.

I concur in the reversal of the convictions on Counts 1 through 6. As to the conviction on Count 7, the misdemeanor, it is my view that since the sentence imposed on that count has been served in full the appeal is moot as to any issues arising from that conviction. See St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943). While there may exist some question as to the continuing scope and vitality of the St. Pierre decision, the modifications that have been enunciated in subsequent Supreme Court decisions do not affect the instant case. A Federal court should not pass judgment on a contention arising in circumstances like the present unless the judgment might have some material effect, Pollard v. United States, 352 U.S. 354, 358, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). The burden is on the appellant (or petitioner) to show this effect to the court. See St. Pierre and Pollard, supra.[1]

Even if it were true that review should be afforded in all cases of *felony* convictions, it remains clear that here, where a man with a long criminal record, cf. Parker v. Ellis, 362 U.S. 574, 576, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960) (Harlan, J., concurring), has been convicted of a *misdemeanor,* has served his sentence, and has not shown any adverse consequences that might flow if the conviction is left undisturbed, the court should not consider his appeal with regard to that conviction.

Nevertheless, a majority of the division has today held that the fact that a convicted person has served his sentence on a given count of a conviction does not render his appeal moot regardless of the lack of demonstrable continued impact of the conviction on that count on the individual. Consequently, I turn to the merits of the appeal from the conviction on Count 7 for attempted housebreaking.

As the majority opinion indicates, Coleman was picked up and taken to the police station, arriving there at approximately 12:50 A.M. Instead of following the ordinary booking procedures, the police led Coleman to a back room where two detectives presumably adept at the art of interrogation questioned him for a period of about "forty-five minutes to an hour." Although at first steadfastly denying any complicity in the attempted housebreaking and refusing to admit the other offenses, appellant finally broke down and confessed when confronted with certain damaging evidence. Apparently he confessed to all the alleged offenses at once. The majority believes that the "threshold confession" rule expressed in United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944), governs the disposition of this issue. In the Mitchell case the evidence was that the defendant had made "prompt and spontaneous" confession of his misdeeds. Id. at 69, n. 2, 64 S.Ct. at 897. The majority further relies on Naples v. United States, 113 U.S.App.D.C. 281, 283–284, 307 F.2d 618, 620–621 (1962), in which the defendant had also made incriminating statements immediately upon the commencement of questioning. They might have added Jackson v. United States, 114 U.S.App.D.C. 181, 313 F. 2d 572 (1962), and Heideman v. United States, 104 U.S.App.D.C. 128, 259 F.2d 943 (1958) cert. denied, 359 U.S. 959, 79 S.Ct. 800, 3 L.Ed.2d 767 (1959). Indeed, the Heideman case describes the outer limits of permissible police interrogation prior to appearance before the Commissioner.[2]

---

1. One clear instance in which review will be granted is when the person challenging the conviction is a resident alien or naturalized citizen who might be deported or denaturalized if the conviction stood. Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946). Cf. United States v. Morgan, 346 U.S. 502,

74 S.Ct. 247, 98 L.Ed. 248 (1954) (habitual offender consequences).

2. "At the outset, the police, assuming they have probable cause for arrest, are entitled to ask the arrested suspect what he knows about a crime. If he denies knowledge, they are entitled to state to him what evidence they have and ask whether

Today the majority makes an unprecedented extension of the previous decisions by permitting the police to continue interrogation for "forty-five minutes to an hour" in the face of repeated denials of guilt by the suspect. True, the confession came within "a matter of minutes" after the physical evidence was shown to the accused. But this was late in the interrogation, at an hour variously said to be 1:30 or 1:40, or perhaps 1:55. Moreover, appellant then confessed to all the alleged offenses. Surely his confession on the 7th count—not shown to have been the first confession—must be excluded on the same basis as his confession on the other offenses.

he cares to comment upon it. * * * If the suspect continues to deny knowledge, the police are entitled to conclude the interview by saying, in effect, 'Do you have anything further to tell us, or do you just want to let it stand the way it is?'

* * * it is only when the questioning crosses into what can be termed 'grilling.' or is continued beyond the *brief* period allowed, that the resulting confession may be held inadmissible." (Emphasis supplied.)