Leroy **L. SPRIGGS**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 17962.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 10, 1963.

Decided June 19, 1964.

Burger, Circuit Judge, dissented.

Mr. George R. Gallagher, Washington, D. C. (appointed by this court) for appellant. Mr. Edward Gallagher, Washington, D. C., (appointed by this court) was on the brief, for appellant.

Mr. John A. Terry, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Miss Barbara A. Lindemann, Asst. U. S. Attys., were on the brief, for appellee. Mr. B. Michael Rauh, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and FAHY and BURGER, Circuit Judges.

FAHY, Circuit Judge.

Appellant was convicted of assault with a dangerous weapon in violation of 22 D.C. Code § 502. He was charged with shooting another with a shotgun following a fight in which he and several others had engaged. The victim testified he saw appellant shoot him. There was additional evidence, aside from confessions, that appellant was guilty, including testimony of a disinterested witness who

lived nearby and saw a good deal of what was going on. Appellant, however, testified at his trial and denied he fired the shot. The question on appeal is whether the confession evidence was admissible.

On ample probable cause and shortly after the shooting Spriggs was arrested in the 600 block of Eastern Avenue near the Maryland line, placed in a patrol wagon and taken to the 14th Precinct.[1] Officer Bailey remained at the scene of the shooting and conducted an investigation there to determine whether it occurred in the District of Columbia. He also interviewed the disinterested witness above mentioned. This investigation necessarily consumed some time before the officer reached the Precinct where Spriggs had been taken after his arrest. The officer said only about fifteen minutes elapsed after he saw Spriggs leave the scene until he, the officer, arrived at the station, or "maybe twenty minutes." He testified he took Spriggs upstairs from the cell block to the detective's office, where he proceeded to fill out certain forms.[2] During this process he conversed with Spriggs. Exactly what relationship, if any, the forms have to booking a prisoner is not clear. In any event during the form-filling process the officer asked Spriggs if he wanted to tell what happened. Spriggs responded: "I am not going to tell you anything." The officer said he went ahead working on the papers. He asked Spriggs again if he wanted to tell what happened, and

Spriggs said "he didn't want to tell me anything." The officer then said to him:

"[T]he hell with it * * * If you don't want to tell me anything, you don't have to. The man you shot knows who shot him; the man that was with him knows who shot him; and I have a completely disinterested witness who also knows who shot him, and she is the one who told me your name. * * *"

It was then that he said Spriggs said "All right, I shot the man," followed by "more conversation filling out this form" during which, the officer continued, Spriggs gave some details, and "later on in the evening" he and Spriggs were joined by Officer Bell, to whom Spriggs also admitted the shooting. This officer testified he arrived at the station at approximately 10:00 p. m. and found Spriggs with Officer Bailey, who was still filling out forms. He said "I think, if I am not mistaken, he had already been placed on the book prior to the statement of facts and the line-up sheet being made, and then after the line-up sheet and statements of facts were made, he was taken back downstairs and placed in the cell block to be taken to the Court the next morning."[3]

Spriggs himself, at the hearing on the admissibility of his statements,[4] testified he was arrested between 7:30 and 8:00 p. m., and was taken to the 14th Precinct and placed in a cell. He asked if he could make a phone call and was

1. This Precinct is located at 4135 Benning Road, Northeast.

2. Being asked how many forms have to be made out in the normal police procedure, when booking an arrested defendant, he said, "We have to make a statement of facts for the Court, a line-up sheet, at that time an investigation sheet and the report that goes on the CCR book at the precinct—four forms." CCR is a ledger book—Central Communications and Records.

3. Although an overnight delay is commonly unnecessary where, as in the District of Columbia, a magistrate is available at all hours, Coleman v. United States, 115 U.S.App.D.C. 191, 317 F.2d 891 (1963);

Jones v. United States, 113 U.S.App.D.C. 256, 307 F.2d 397 (1962), the trial court admitted the confessions on the theory they were "threshold confessions." See Mitchell v. United States, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944).

4. The testimony as to the confessions followed a hearing at which the jury was excluded. At the conclusion of the hearing the court decided the admissions should be received. When the case was first briefed in this court this was not relied upon as error. However, members of the court were concerned as to admissibility of the evidence and memoranda were requested and filed after argument.

told that he could make no call until he was ready to talk about shooting Shaw. He said he did not shoot Shaw. He was left in the cell until about 2:30 or 3:00 o'clock when he was taken upstairs. He was told he did not have to tell anything, "We got a man [who] can testify that you actually shot Shaw." He asked who it was and was told that his name was Joseph Washington. Spriggs then asked to be taken to confront Washington and was told they did not have to do that: "We already have a statement." Spriggs said he did not admit he had shot Shaw, the only thing he said was "If Washington said I shot him, well, I shot him."

We do not agree that the admissions were "threshold." Just what occurred at the station, and its sequence, cannot be determined with accuracy. It is clear, however, that Spriggs was booked and then taken "upstairs" for questioning during a process of form-filling, instead, as required, being taken "as quickly as possible" to a magistrate after being booked. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). Spriggs twice responded to the officer he did not wish to say anything. This much appears from the officer's own evidence. He was then told, "To hell with it" etc., as above set forth, as also appears from the officer's own evidence.

The *McNabb-Mallory* exclusionary rule does not permit the use at trial of evidence of a repudiated confession obtained by secret interrogation during a form-filling process such as here occurred after arrest on probable cause and prior to arraignment. It is of little consequence that the officer says he advised Spriggs he need make no statement and if he did it would be used against him. Under the law Spriggs was entitled to be taken to a magistrate for public advice by the magistrate as to his rights, including his right to counsel with an opportunity to obtain counsel.[5] In the varying circumstances affecting different persons, with differences in their experience, education and other individual attributes, it is impossible to measure accurately the pressures in a Police Station upon prisoners under secret interrogation without counsel, relative or friend. The unreliability of evidence of statements then said to have been made, as well as the need to obtain compliance with Rule 5(a), *note 5, supra,* is one of the reasons the Supreme Court adopted the rule of evidence regarding confessions which no longer turns upon the issue of their voluntariness. The rule is found in the following language of the Supreme Court:

> "The arrested person may, of course, be 'booked' by the police. But he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support * * * his guilt."

Mallory v. United States, supra 354 U.S. at 454, 77 S.Ct. at 1359. To enlarge the time consumed in the usual booking process by the filling out of a number of forms prior to taking the prisoner to a magistrate, and to contend that the time

---

5. Rule 5(a) and (b), Fed.R.Crim.P.:

"(a) Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith.

"(b) Statement by the Commissioner. The commissioner shall inform the defendant of the complaint against him, of his right to retain counsel and of his right to have a preliminary examination. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him. The commissioner shall allow the defendant reasonable time and opportunity to consult counsel and shall admit the defendant to bail as provided in these rules."

thus consumed is not "unnecessary delay" and therefore available for secret interrogation to elicit a confession is to ask the court to erode the *McNabb-Mallory* rule. If these forms are to be filled out prior to the prisoner's appearance before a magistrate, which may well be, it does not follow that a self-incriminating statement elicited by police interrogation during the process is admissible. The inquiries of Officer Bailey in this case were designed, as appears from his own testimony, to elicit the "damaging statements" referred to in *Mallory*, and such statements are not rendered admissible because elicited during the form-filling process. We bear in mind that *Mallory* is a reaffirmation and clarification of McNabb v. United States, 318 U.S. 332, 344, 63 S.Ct. 608, 614, 87 L.Ed. 819, where the Court in 1943 had said that the statutory predecessor of Rule 5(a) "aims to avoid all the evil implications of secret interrogation of persons accused of crime." [6]

■ The *Mallory* rule does not exclude a spontaneous confession after arrest. As the Court said in United States v. Mitchell, 322 U.S. 65, 69, 64 S. Ct. 896, 898, 88 L.Ed. 1140 (1944), the mere fact that a confession is made while in the custody of the police does not render it inadmissible. But this was said in a case where the prisoner's action was described by the Court as "spontaneous cooperation and concession of guilt." The admission of spontaneous or threshold confessions has been upheld by this court in Perry v. United States, 102 U.S. App.D.C. 315, 253 F.2d 337 (1957), cert. denied, 356 U.S. 941, 78 S.Ct. 785, 2 L. Ed.2d 816 (1958), and in other cases where there was deemed to be no "unnecessary delay." See, *e. g.*, Muschette v. United States, 116 U.S.App.D.C. 239, 241, 322 F.2d 989, 991 (1963), in which the total delay between arrest and arraignment was less than two hours and in which the oral confession appears to have been given within twenty-five minutes after arrest, and was then reduced to writing and signed within an hour. Critical to the decision is the court's statement, "The problem is not to be solved by watching the clock"; it is in determining "whether the delay which occurred was in fact unnecessary." And see Bailey v. United States, 117 U.S.App. D.C. ——, 328 F.2d 542 (1964), and cases there reviewed. In these cases the time between the arrest and the obtaining of the questioned evidence may have been longer than in Spriggs' case, so that if the clock alone were to be watched these decisions would require admission of the evidence of Spriggs' confession; but we have held and we now hold that time is but one factor. There always remains the question whether the time was utilized to obtain a confession by secret police interrogation after arrest and prior to a magistrate's hearing. For a confession so obtained is not "spontaneous" within the *Mitchell* decision, and it is not admissible under *Mallory*.

The *McNabb-Mallory* rule, as it seems to me, takes into account not only the obtaining of compliance with Rule 5(a) of the Federal Rules of Criminal Procedure. As we have said it takes into account also the unreliability of evidence obtained by secret interrogation. We add that the rule is related also to the constitutional protection of the Fifth Amendment against compelled self-incrimination, and to the guaranty of the Sixth Amendment of the right to counsel and to a public trial, though the rule has not been explicitly based upon these constitutional provisions.

As we pointed out in Killough v. United States, *supra*, the status of a person changes when he is arrested. The law attaches specific rights to this changed status, spelled out in Rule 5 of the Federal Rules of Criminal Procedure.[7] The

6. In the present case the statement to Officer Bell was inadmissible under Killough v. United States, 114 U.S.App.D.C. 305, 315 F.2d 241 (1962), once it is held the statements to Officer Bailey were inadmissible.

7. *Mallory* points out that time may be taken to verify a claim of the arrestee

governmental machinery available to aid the investigation and prosecution of crime is to be used consistently with these rights. The result is to preclude the use at trial of self-incriminating statements said to have been made during secret police interrogation in the interval after arrest and prior to compliance with the rights granted—statements which are not "spontaneous" as in *Mitchell.*

It would be a disservice to the exclusionary rule reaffirmed in *Mallory* were we to hold that the means here used to enlarge the period of delay between arrest and magisterial proceedings served to render admissible confessions said to have been elicited during that period. For us so to hold would sanction an erosion of an important rule of evidence. It was the erosion of *McNabb* that led the Supreme Court in *Mallory* to reaffirm *McNabb.*

Reversed and remanded for a new trial.

BURGER, Circuit Judge (dissenting).

Appellant's admission that he shot the complaining witness came within 30 minutes after his arrest. There is no evidence in this record, and we have no basis for noticing judicially, what length of time was reasonably required in this case to complete the formalities described as "booking." These are not idle formalities; nothing could be more dangerous than to have people taken into custody without promptly making a complete record of the fact of detention, the name and address of the person, his nearest relatives, his employment and some statement of why he is in custody. This may take more time in some circumstances than in others, depending upon variable factors. I agree that "unnecessary delay" cannot be measured solely by the clock, but I also insist that these steps before preliminary hearing are essential and cannot be dispensed with or truncated.

The majority seems to conclude, as I read the opinion, that any time lapse is bad if, during that time, an arrested person makes damaging admissions; it is not time but talking which is considered wrong. But to me a twenty to thirty minute time lapse, in which an admission is made, does not seem per se inordinate or unreasonable, and on this record we have no way of knowing that the "delay" was in fact unnecessary. For this reason I would not reverse but remand so that a record can be made as to precisely what was done, what was "necessary" and what, if anything, was "unnecessary." On such a record the District Judge could separately evaluate the admissibility of both the oral and the written statement. We would then have an adequate basis for review.

It should be clear that under the relevant holdings of the Supreme Court and this court the interrogation of a person in custody by police, however desirable and logical it may seem for the solving of crimes, is now drastically limited. It should be equally clear that under the relevant decisions it is impermissible to prolong the formalities or "booking" process or form filling for the purpose of engaging in questioning on the substantive facts of a real or suspected criminal act, once it is clear that there is probable cause to charge a crime.[1]

But we cannot assume, as I suggest the court often does, that the evaluation of

---

that would show his arrest to be a mistake. We have no such situation here. Similarly, the questions asked by the police cannot be justified as "appropriate inquiry to make sure that the police were not charging the wrong persons," as in Heideman v. United States, 104 U.S.App. D.C. 128, 130, 259 F.2d 943, 945 (1958), cert. denied, 359 U.S. 959, 79 S.Ct. 800, 3 L.Ed.2d 767 (1959).

1. When a spontaneous threshold confession is made or when admissions follow from appropriate limited inquiry, see Heideman v. United States, 104 U.S.App.D.C. 128, 259 F.2d 943 (1958), cert. denied, 359 U.S. 959, 79 S.Ct. 800, 3 L.Ed.2d 767 (1959), it is not merely proper but highly desirable to reduce such statements to writing promptly. See Metoyer v. United States, 102 U.S.App.D.C. 62, 64–65, 250

probable cause is a simple matter like measuring the length of the suspect's shoe or the caliber of a pistol cartridge. This is especially so when the courts frequently change and raise the standards. It is no simple process in every case for a police officer to be absolutely sure at a given point that he indeed has adequate grounds.

The matter of processing a detained person for presentment to a magistrate has been unnecessarily confused by such irrelevancies as loose talk about "midnight hearings" and "24-hour magistrate service." The heart of the problem, as I see it, is that once it can fairly be said that there is probable cause to charge a detained person, he is not to be interrogated. He may be held to await the reasonable availability of a judicial officer. If the arrest occurs at midnight, it is absurd to talk of calling a Judge or Commissioner out of his bed to conduct a hearing which may take only 10 minutes and can as readily be held in regular business hours the following morning. Moreover, police officers or other witnesses may not be available outside regular business hours. But during the interval while the detained person is awaiting presentment before a judicial officer, substantive interrogation must, under the controlling authorities, be suspended. It is not delay per se which is prohibited by *Mallory*; it is the interrogation process which is restricted.

Once probable cause is established, as it may have been by the time officer Hall returned to the Precinct Station 20 or 30 minutes after the arrest, formalities of booking should be disposed of promptly and the suspect taken to the judicial officer for his warning and hearing.

Police precinct stations, on a July Sunday evening, are often very busy places. People and officers come and go; officers are likely to be interrupted by a multiplicity of demands on their attention. The process of securing information for "booking" cannot be as formal and orderly as a housewife, interviewing a much sought after cook who, because of her preferred position, is able to command the exclusive attention of the interviewer. We ought to act on facts, not conjecture and surmise. Since we know that Judges and Justices of the United States Courts often labor in study and conferences for days, weeks and even months in an appraisal of probable cause or reasonable grounds for an arrest, a warrant or a charge, it hardly seems rational to me to deny police officers, who are not profoundly trained in law, a period of 45 minutes, more or less, for the combined process of evaluating and articulating the grounds for charging a criminal act.

There may or may not be some explanation which would satisfy us either that the delay and police activities during the interim were unnecessary or that they were not. I would not act without an adequate record developing all the facts.

F.2d 30, 32–33 (1957). But the function of the written statement should be making a record of the substance of the oral utterances.