J. Skelly Wright, Circuit Judge, joined by Bazelon, Chief Judge, filed a statement on denial of petition for rehearing en banc.

Russell L. PERRY, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18241.

United States Court of Appeals
District of Columbia Circuit.

Argued May 28, 1964.

Decided Nov. 5, 1964.

Petition for Rehearing en Banc
Denied Jan. 8, 1965.

Mr. Richard T. Conway (appointed by this court), Washington, D. C., for appellant.

Mr. Martin R. Hoffmann, Asst. U. S. Atty., with whom Messrs. David C. Ache-

---

son, U. S. Atty., Frank Q. Nebeker and Harold H. Titus, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before WASHINGTON, BURGER and MC-GOWAN, Circuit Judges.

BURGER, Circuit Judge:

This is an appeal at government expense from conviction for assault with a deadly weapon under 22 D.C. CODE ANN. § 502 (1961) and assault with intent to kill under D.C. CODE ANN. § 501 (1961).

In the early morning hours of a party, an altercation developed between the complaining witness and a woman guest. Appellant, who was a friend of the woman, left the room, returned promptly with a pistol and shot the complainant at least three times. Appellant then went to Precinct Station #1 and surrendered himself and the pistol at 6:00 a. m., saying that he had shot the victim but would tell them no more.[1] Just prior to appellant's arrival, officers in the field had reported the shooting to the police station and directed that appellant be picked up. Policemen to whom appellant surrendered took him immediately to the scene of the shooting, where they encountered great confusion; they remained there only a short time during which appellant again admitted the shooting but refused to elaborate further. The police then returned to the station with appellant and upon arrival and before the booking process at approximately 6:20 or 6:30 a. m. appellant made certain oral statements. The events described, beginning with appellant's surrender, the trip to the scene of the shooting, the time spent there, the return trip, and appellant's oral statement to the police, all occurred within 20 to 30 minutes. Appellant's oral statements to police were introduced as part of the Government's case in chief over objections that they were obtained in violation of Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), and cases decided thereunder.

An officer testified to these admissions as follows:

"Well, he stated that the complainant had been in the front room of the house arguing with Joe and his wife. * * * And that he went in and told him to be quiet. Then he went back in the dining room and Taylor then came into the dining room and sat down and Lenora Miles, the complainant's [sic] girl friend, came into the room and Taylor started to yell at her and slapped her a couple of times and knocked her down. He said he got up, went down in the basement and got a gun and came back and started shooting at him. He said that Taylor had taken a swing at him when he came back with the gun, but missed. And he didn't recall how many times he fired the gun."

Record, pp. 169–70.

Appellant took the stand in his own behalf and admitted the shooting, contending that he had acted in genuine fear for the bodily safety of his girl friend who was being attacked by the complainant. He testified that when he left the dining room to get the gun, the complainant was still struggling with the girl and holding her around the neck. On cross-examination, by way of impeachment, the prosecutor confronted appellant with a brief portion of a written statement which appellant admitted having signed.[2]

1. A stipulation of police officers' testimony on this point was read to the jury:
"At 6 a.m. on December 15, 1962, Perry appeared at No. 1 Precinct and in the presence of Sergeant H. W. Collier and Lieutenant G. A. Marino, surrendered a gun and himself saying:
"'You are looking for me, here is the gun.' Lieutenant asked, 'are you Russell Perry?'"
Record, p. 153.

2. Did you not say, Mr. Perry (reading):
"Then I pulled Jerome back into the dining room and told him to go to bed and then Lenora came back to the dining room and Jerome then pulled away from me and grabbed Lenora around

Neither this written portion nor the oral statements concerning the altercation mentioned appellant's contention that when he left for the basement the struggle was continuing and the complaining witness was choking his girl friend; the prosecutor on cross-examination of appellant and in his arguments to the jury emphasized these omissions from appellant's statements to police given shortly after the event.

■ In light of the continuous movement between the precinct station and the scene of the shooting and since the record indicates that no opportunity for sustained interrogation of appellant was present, we conclude that the police testimony as to the oral statements by appellant was admissible under the doctrine of spontaneous threshold admissions. See United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944); Crump v. United States, No. 17939, 118 U.S. App.D.C. 302, 335 F.2d 724, p. 727 n. 3; Ramey v. United States, No. 17774, 118 U.S.App.D.C. 355, 336 F.2d 743.

The procedures and activities of a local police precinct station are not to be equated to the orderly, step by step development of a court trial or appellate argument, where each participant has an assigned role which is fitted into an established pattern. In a police station there are people coming and going; telephone calls can constantly interrupt officers engaged in other activities. Calls, interruptions, reports of crimes, the arrival of witnesses, suspects, complainants do not occur in a regulated pattern as, for example, with clients calling at a lawyer's office or patients waiting their turn to see a doctor; the parallel is more accurately the emergency receiving room of a general hospital.

■ Moreover, it is a fundamental error to assume that each police officer at all times knows all that other officers may know about any given case in its early stages. The situation existing at the time of the events under review is quite unlike that revealed in the record before us in full detail, which discloses that the totality of police information, now known to have been reliable, warranted presentment to a magistrate 15 or 20 minutes before the challenged statement was made. It is quite easy after the event— with the benefit of hindsight—to pinpoint the time when probable cause ripened and when police officers could have appropriately taken a suspect to a magistrate with reasonable assurance he would also find probable cause to hold an accused; but we are not prepared to say that such a brief delay, after appellant had already admitted the shooting, is fatal to any use of later utterances which simply elaborated on his original admission that he had shot someone. When we accept a threshold utterance of an accused who spontaneously and promptly tells police that he "shot a man," it places too much stress on common sense to say that we should exclude

the neck and she then pulled away from him and then he began to punch her in the face with his fists. I tried to separate them and he knocked Lenora to the floor and she struck her head on the *dining room table*. At this time, I lost control of my senses and I thought of the gun that was downstairs in the basement and I ran downstairs and got it. I then came back upstairs and started shooting at Jerome."
Record, pp. 235–36.
This statement was not introduced in the Government's case in chief: it was apparently taken by police officers between 7:05 and 8:30 a.m. that morning, after appellant had been booked. At bench conference the prosecuting attorney indicated that he would offer a portion of the statement for impeachment purposes only. Defense counsel offered no objection either at the bench or before the jury to the prosecutor's use of the excerpt from the statement. In view of the lack of objection on this point, we cannot overlook the possibility that defense counsel determined as a matter of trial tactics to offer no objection, possibly because he felt that the statement was more corroborative than impeaching of appellant's testimony. This would have been a reasonable tactical judgment on his part. We find no reversible error in the prosecutor's limited use of the written statement in this case.

his more detailed statement concerning the event made shortly thereafter. Some reasonable measure of latitude must be allowed for police officers working under stress with situations and problems which are inherently charged with emotional elements and in circumstances not conducive to the calm reflective processes available in ex post facto evaluation at the appellate stage.

■■ We have examined the record in light of appellant's contentions on the issues relating to instructions on self-defense and criminal responsibility, comments of the trial judge, and denial of a speedy trial and find no error warranting reversal. Additionally, we have considered appellant's claim that he was entitled to a mental examination by experts of his own choice at government expense, rather than being limited to members of the Staff of St. Elizabeths Hospital. There is no absolute right to examination by an expert of the accused's choice and in the circumstances of this case we find no abuse of discretion in denying such a request. Cf. Watson v. Cameron, 114 U.S.App.D.C. 151, 312 F.2d 878 (1962); Appel v. Overholser, 82 U.S.App.D.C. 379, 164 F.2d 511 (1947).

Affirmed.

WASHINGTON, Circuit Judge (dissenting):

This case seems to me to present the following serious questions:

(1) Was the oral confession or the written confession obtained from appellant during a period of unnecessary delay in bringing appellant before a magistrate, under the requirements of Rule 5(a), and the decision in Mallory v. United States?

(2) Can appellant be deemed to have waived objection to the wrongful use of either confession at trial, and, if not,

(3) Did the introduction of either confession create a significant possibility of prejudicing the jury, not merely on the appellant's credibility, but on the testimony crucial to appellant's defense?

In my view, the oral confession was obtained in clear violation of Rule 5(a), FED.R.CRIM.P. Appellant entered a police station at 6 A.M., December 15, 1962, identified and surrendered himself and his gun, and stated that he had shot Jerome Taylor. He further stated that he would not answer any more questions. Two minutes earlier the police had gone to the house where the shooting occurred and had taken down the names of the witnesses. At 6:05 or 6:10 appellant was taken to the scene of the shooting, where he was questioned by the police. At that time he again refused to say anything beyond a simple admission of the shooting. Appellant and several witnesses to the shooting were brought to the police station at 6:20 or 6:30 A.M. The police again questioned appellant, this time for a period of ten or perhaps twenty minutes. Appellant then gave an oral confession in elaboration of his original statement. A written confession was prepared, and Perry signed it. Later in the day, he was taken before a committing magistrate.

In Naples v. United States, 113 U.S. App.D.C. 281, 284, 307 F.2d 618, 621 (1962), we said:

"After the admissions by Naples, the police clearly were in position to present him before a committing magistrate. Available then was the further evidence to be supplied by the apartment manager who had discovered the body. The testimony of the coroner and that of police at the scene could have been adduced."

After Perry had twice admitted the shooting, and after the police had had an opportunity to adduce evidence from witnesses to the affair and the officers at the scene, and to examine the revolver in which five rounds of ammunition had been expended, the police—in the words of the Naples case—"clearly were in position to present * * * [Perry] before a committing magistrate." In Naples, this court sitting en banc found a Mallory violation where the defendant

had been brought back to the scene of the crime and there questioned, following his incriminatory statements at the police station. Judge Danaher, writing for the majority, emphasized that Naples was questioned during a period when he was "unwarned and uncounseled." The same is true in this case.[1] Here the police went even further than they had with Naples, for they returned Perry to the station for further questioning.

The police practice here clearly violates the strictures of the Supreme Court in Mallory v. United States, 354 U.S. 449, 454, 455, 77 S.Ct. 1356, 1359, 1 L.Ed. 2d 1479 (1957). The Supreme Court there held that an arrested person "is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt," and that "the delay must not be of a nature to give opportunity for the extraction of a confession." Contrary to the Supreme Court's mandate, Perry was not brought "before a judicial officer as quickly as possible so that he * * * [might] be advised of his rights and so that the issue of probable cause * * * [might] be promptly determined," but was subjected to interrogation that more than lent itself to the elicitation of damaging statements.

This case is strikingly similar to Spriggs v. United States, 118 U.S.App. D.C. 248, 335 F.2d 283 (1964). Spriggs was questioned during a form-filling process after arrest and prior to arraignment. As in the instant case, the police continued the interrogation after the prisoner twice indicated that he wished to say nothing. Spriggs holds that time is not decisive, and that the

confession must be excluded if any of the delay is used for the purpose of obtaining a confession.

"* * * time is but one factor. There always remains the question whether the time was utilized to obtain a confession by secret police interrogation after arrest and prior to a magistrate's hearing. For a confession so obtained is not 'spontaneous' * * *." Supra at 251, 335 F.2d at 286.

In Spriggs, we ruled the confession inadmissible. I think we should do likewise in this case. Here, as in Spriggs, the police had more than enough evidence to present the prisoner to a magistrate. Unlike the delay in Heideman v. United States, 104 U.S.App.D.C. 128, 131, 259 F.2d 943, 946 (1958), cert. denied, 359 U.S. 959, 79 S.Ct. 800, 3 L.Ed.2d 767 (1959), the delay here between arrest and confession was not "consumed only by the [preliminary] questions * * * and by the preparing of papers, booking, photographing, fingerprinting and transportation."[2] See Coleman v. United States, 114 U.S.App.D.C. 185, 313 F.2d 576 (1962). The court in Spriggs distinguishes Heideman as involving questioning justified by the police need to determine whether they had the right man. Supra at 251, n. 7, 335 F.2d at 286, n. 7.

Jackson v. United States, 114 U.S.App. D.C. 181, 184, 313 F.2d 572, 575 (1962), does not support the Government's position, and in fact provides a standard which clearly renders the confession in this case inadmissible. In Jackson, appellant "freely and spontaneously admitted his participation in the crime as soon as Lt. Daly began to talk with him

---

1. There is no evidence in the record that any police officer took the trouble to advise Perry of his rights.

2. The Heideman case held that the police are entitled to ask an arrested person what he knows about a crime, and, "If he denies knowledge," whether he wishes to comment on the evidence, and "If the suspect continues to deny knowl-

edge," whether he has anything further to say. Here, the accused had admitted the offense, the police had abundant additional evidence to that effect; the possibility, emphasized in Heideman, of "no charge being made" was virtually nil. Under these circumstances it would be facetious to argue that appellant was being questioned for his own good.

about 10:30 a. m."[3]  Here, appellant, on two separate occasions following his arrest, indicated his unwillingness to discuss the details of the crime.[4]  Yet the police, having enough evidence to present appellant to a magistrate,[5] and having no reason to suspect they had the wrong man, nevertheless persisted in subjecting appellant to additional interrogation.

Defense counsel for Perry objected to the officer's testimony about the detailed oral confession, "on the ground it violates the *Mallory* rule."[6]

While I doubt whether the erroneous admission of the details of a confession, over defendant's objection, could ever be deemed harmless error,[7] in this case the use of the confession was unquestionably prejudicial.  The officer testified that Perry said "Taylor started to yell at her [Lenora Miles] and slapped her a couple of times and knocked her down. He said he got up, went down in the basement and got a gun and came back and started shooting at him."  The defendant testified on the stand, however, that Taylor

> "grabbed Lenora again and pushed her up against the buffet, grabbed her around the neck and was choking her and she was going down on her knees gasping for breath.

* * * * * *

"He was choking her for quite some time * * *.

"* * * * when I seen that nobody could do anything to prevent him from choking her and she was at the sideboard going down, she was struggling, trying to get up, I went downstairs and got the gun.

* * * * * *

"I went downstairs and it was in the drawer and I just reached in there and got it and came back upstairs and started shooting."

One of the crucial issues before the jury was whether the defendant used more force than was necessary under the circumstances.  If the omission of any reference to "choking" in the confession were construed by the jury as proof that Mr. Taylor had not been choking Miss Miles, but had merely slapped her and knocked her down, the jury might well have concluded that appellant used excessive force.  Indeed, in its closing argument the Government asserted that Miss Miles had merely been struck, and in its direct examination of the police officer, Government counsel emphasized, several times, that appellant had said only that Miss Miles had been struck and knocked down.[8]

---

3. Metoyer v. United States, 102 U.S. App.D.C. 62, 250 F.2d 30 (1957), involved a confession made "at once" in response to "the opening question of the Washington police sergeant."

4. Upon giving himself up and admitting the shooting he said "I am not answering any more questions."  At the house he "stated that he did do the shooting but he wasn't going to say anything else."

5. And if they did not think they had such evidence they should have released appellant.  See Naples v. United States, *supra*.

6. I cannot see how defendant's failure to request a hearing detracts from the strength of his objection, especially since the only matter in serious dispute was a question of law, not of facts.

7. See Jones v. United States, 113 U.S.App. D.C. 256, 307 F.2d 397 (1962):
   "The Government argues that, in any event, the admission of the written confession was harmless error, being merely cumulative.  It may be seriously questioned whether any written and signed confession in a criminal case can ever be merely cumulative.  A confession is a most persuasive form of proof.  It is difficult to conceive its admission being non-prejudicial to the defendant under any circumstances." (Footnotes omitted).

8. A further material contradiction between the oral confession and appellant's testimony at the trial was that the former contained a statement that Taylor had taken a "swing" at Perry when he returned with the gun, while the latter asserted that Taylor was again trying to assault Miss Miles.

The fact that a second confession (in writing) was introduced by the prosecution, without objection, cannot conceivably render the erroneous admission of the first confession "harmless error." Defense counsel's decision not to object was obviously made in light of the erroneous decision of the court to admit the previous confession. The first confession would cast doubt on the defendant's testimony that Miss Miles was being choked when he left to get a gun, and that Taylor. was about to assault her again when the defendant returned with the gun. Since that first confession was so harmful to the defense, it was perhaps wise strategy for the defendant not to object strenuously to the admission of the second confession, since that statement contained language which could be construed as consistent with "choking" and did not contain language tending to contradict defendant's testimony about the subsequent assault. There would seem to be no doubt that the first confession was quite harmful to the defendant. Certainly the fact that another, less harmful, confession was later admitted into evidence (and probably would have been objected to in the absence of the first confession) did not make the first confession any more admissible or less harmful.

I respectfully dissent.

Before BAZELON, Chief Judge, and FAHY, WASHINGTON, DANAHER, BASTIAN, BURGER, WRIGHT and McGOWAN, Circuit Judges, in Chambers.

## ORDER

PER CURIAM.

There not being a majority of the circuit judges of this circuit in favor of a rehearing of the above-entitled ·case by the court *en banc*, the petition for rehearing *en banc* is denied.

Dated: January 8, 1965

FAHY, Circuit Judge, did not participate in the foregoing order.

Statement of WRIGHT, Circuit Judge, with whom BAZELON, Chief Judge, joins, for their votes favoring rehearing en banc.

The panel opinion in this case introduces the latest in a series of "doctrines" which, at least to me, appear to circumvent the teaching of the Supreme Court in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), and McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), as well as the decisions of this court in Spriggs v. United States, 118 U.S.App.D.C. 248, 335 F.2d 283 (1964); Jones v. United States, 113 U.S.App.D. C. 256, 307 F.2d 397 (1962); Naples v. United States, 113 U.S.App.D.C. 281, 307 F.2d 618 (1962); and Williams v. United States, 113 U.S.App.D.C. 7, 303 F.2d 772, cert. denied, 369 U.S. 875, 82 S.Ct. 1145, 8 L.Ed.2d 277 (1962). In these cases the Supreme Court and this court have made it clear that ordinarily, and at least until the accused has been advised of his rights and has been accorded the additional protections the law provides, criminal convictions are to be based on evidence produced by proper police investigation and not out of the mouth of the accused.[1] Many years ago this country made its decision on our system of criminal justice. We chose an accusatorial system over the inquisitorial type, and the essential difference between the two relates to the use of the accused by the police in obtaining evidence for his conviction.[2]

1. "We have learned the lesson of history, ancient and modern, that a system of criminal law enforcement which comes to depend on the 'confession' will, in the long run, be less reliable and more subject to abuses than a system which depends on extrinsic evidence independently secured through skillful investigation. * * *" Escobedo v. State of Illinois, 378 U.S. 478, 488–489, 84 S. Ct. 1758, 1764, 12 L.Ed.2d 977 (1964). (Footnotes omitted.)

2. See STEPHEN, A HISTORY OF THE CRIMINAL LAW OF ENGLAND 441 (1883); CHAFEE, THE BLESSINGS OF LIBERTY 186–190 (1956).

The new peripatetic principle announced in the panel opinion here will no doubt come to be called the "continuous movement doctrine." [3] It is of the same genre and purpose, and of the same general genesis, as the "reaffirmation doctrine," [4] of recent memory, and the "spontaneous declaration doctrine," [5] of which I shall have more to say on an upcoming occasion. In the present case the "continuous movement" began when the appellant voluntarily appeared at the police station and announced that he had shot a man. The police were already aware of this fact, and indeed were out looking for appellant. Instead of booking him and then taking him without unnecessary delay to the Commissioner for instruction as to his rights in the circumstances in which he found himself, the police took him back to the scene of the crime. There, as at the police station, he was questioned and refused to say more than that he shot the victim. Police at the scene, however, learned from the witnesses there present that the shooting was the result of a triangular affair. On leaving the scene the police returned appellant to the station where again, instead of booking him and bringing him without unnecessary delay to the Commissioner, the police subjected him to interrogation which resulted in oral and written statements, both of which were used against him at the trial.

I must confess to a complete inability to distinguish between the statements used against appellant in this case and those ordered excluded in the cases herein cited. And I must also say that the "continuous movement doctrine" helps me very little in understanding why the panel did not follow these prior precedents of this court and the Supreme Court.[6]

3. The panel opinion, page 815, reads:
"In light of the continuous movement between the precinct station and the scene of the shooting and since the record indicates that no opportunity for sustained interrogation of appellant was present, we conclude that the police testimony as to the oral statements by appellant was admissible under the doctrine of spontaneous admissions. * * *"

4. Jackson v. United States, 109 U.S.App. D.C. 233, 285 F.2d 675 (1960), *cert. denied*, 366 U.S. 941, 81 S.Ct. 1666, 6 L. Ed.2d 852 (1961); Goldsmith v. United States, 107 U.S.App.D.C. 305, 277 F.2d 335, cert. denied, *sub nom.* Carter et al. v. United States, 364 U.S. 863, 81 S.Ct. 106, 5 L.Ed.2d 86 (1960); compare Killough v. United States, 114 U.S. App.D.C. 305, 315 F.2d 241 (1962) (*en banc*).

5. Fredricksen v. United States, 105 U.S. App.D.C. 262, 266 F.2d 463 (1959).

6. See cases cited in first paragraph of text.