STATE of Missouri ex rel. Hershel HOOVER, Relator,

v.

Honorable Lackland BLOOM, Judge, Circuit Court, City of St. Louis, Respondent.

No. 55421.

Supreme Court of Missouri, En Banc.

Jan. 11, 1971.

Richard Boardman, St. Louis, for relator.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

MORGAN, Judge.

In this original proceeding in mandamus, relator asserts that respondent has refused to provide him a psychiatric examination by a physician of his own "choosing" as provided in paragraph (4) of Section 552.-040, V.A.M.S.

Relator is now and since November 20, 1953, has been a patient in state mental hospital No. 1 at Fulton. His commitment on that date followed a judgment of acquittal by reason of insanity of a charge of child molestation. After obtaining leave to proceed in forma pauperis, relator filed an application for release wherein he alleged that he is now sane and requested a judicial hearing as to whether or not he "does not have and in the reasonable future is not likely to have a mental disease or defect rendering him dangerous to the safety of himself or others or [is] unable to conform his conduct to the requirements of law." (Paragraph (1), Section 552.040.) His request for a psychiatric examination by a physician of his own choosing at state expense was denied by the trial court.

Paragraph (4) of Section 552.040 provides in part: "Prior to the hearing any of the parties shall be entitled to an examination of the committed person, upon written application, by a physician of his or its own choosing and at his or its expense." As originally enacted, Laws 1963, p. 674, this statutory provision concluded with the word "choosing" and by amendment of 1969 the words "and at his or its expense" were added.

■ Initially, it should be noted that although Section 552.040 was originally enacted some ten years after relator was committed its provisions are remedial in nature and applicable. Cyronne-DeVirgin v. State of Missouri (8th Cir.), 341 F.2d 568, cert. denied, 382 U.S. 895, 86 S.Ct. 189, 15 L.Ed.2d 151.

Basically, relator's argument is premised on the assertion that he has a statutory right to an independent examination and a constitutional right that the examination be at state expense. He submits that the "standard of release" established by the statute is couched in terms necessarily calling for expert testimony from the psychiatric field, and that absent such assistance no meaningful review of his mental condition can be had. First, for the reason the only issue for decision relates to his sanity and requires technical knowledge beyond the training of his attorney which will result in appointment of counsel being only an empty gesture. Second, without an independent examination there is no reasonable possibility he can refute the hospital's declaration he is still insane nor sustain the burden of proving his sanity. It is then concluded that such limitations so impair his ability to prosecute his petition for release that he is being denied due process. Next, he submits that: "The right to have a psychiatric examination prior to a hearing on an application for release under section 552.040 is of fundamental importance and is deserving of special protection under the Equal Protection Clause. Access to necessary expert testimony in an action of this nature should turn neither upon a person's economic status nor upon the charity of the psychiatric profession. Although the United States Constitution does not compel the State of Missouri to make a psychiatric examination available to all parties as a matter of right, Relator submits that once Missouri did provide that 'all parties' are entitled to an independent examination incident to hearings pursuant to section 552.040 * * * it could not do so in a way that operates to deny an examination to Relator solely because of his poverty."

Respondent submits "that the due process clause of the Fourteenth Amendment of the Federal Constitution has not generally been held to require that a state ap-

point expert witnesses to assist a defendant in a criminal case * * * although the crucial issue around which the trial revolves may be testimony from the state's expert witness." However, greater reliance is placed on the argument that Missouri has made available to relator a constitutionally sufficient alternative in view of his financial inability to employ a psychiatrist of his own choosing. That alternative is evidenced by an affidavit of the Director of the Division of Mental Health, attached to respondent's brief, that Operating Regulation No. 99 of the division, adopted January 8, 1970, provides: "An indigent patient who cannot afford private psychiatric consultation, filing a petition for release over the objection of the superintendent, will be re-evaluated by a member of the staff of one of the three Mental Health Centers (Malcolm Bliss, Mid-Missouri or Western Missouri) in order that an impartial opinion can be rendered and made available at the court proceedings." The rule further provides the examination will be held at a hospital other than that where petitioner has been receiving custodial care. In addition, it is suggested that until relator shows either that the state has made no effort to provide an independent examination or that the independent examination which the state has provided him is deficient, the instant action is premature.

Relator replies by supplemental brief wherein is included a transcript of a similar proceeding. It pertains to an unrelated case wherein a psychiatrist testified that he was employed by the state; that he made an examination at one of the named hospitals of a person filing for release; that when he disagreed with the medical report from the custodial hospital, "pressure" was exerted for him to change his conclusion —which he refused to do.

All parties agree that commitment proceedings pertaining to mentally ill persons must allow for due process and equal protection as called for by the Fourteenth Amendment. Baxstrom v. Herold, 383 U. S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620; Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326.

In Perry v. United States, 121 U.S.App. D.C. 29, 347 F.2d 813, the court, speaking through Justice Burger, said: "There is no absolute right to examination by an expert of the accused's choice and in the circumstances of this case we find no abuse of discretion in denying such a request." In Watson v. Patterson (10th Cir.), 358 F.2d 297, it was declared: "Appellant concedes that he has found no cases directly holding that the appointment of experts is a constitutional requisite; nor has our search revealed any such cases." See also McGarty v. O'Brien (1st Cir.), 188 F.2d 151; State v. Chapman, Mo., 365 S.W.2d 551; State v. Aubuchon, Mo., 381 S.W.2d 807. Apparently to the contrary is the holding in Jacobs v. United States (4th Cir.), 350 F.2d 571, wherein the court said: "Unquestionably in the proceedings below the defendant, if financially able, would have had the right to call a privately retained psychiatrist as a witness. It is obvious that only his inability to pay for the services of a psychiatrist prevented a proper presentation of his case. The Supreme Court has unmistakably held that in criminal proceedings it will not tolerate discrimination between indigents and those who possess the means to protect their rights." Reference a factual situation more comparable to the instant case, the court in DeMarcos v. Overholser, 78 U.S.App.D.C. 131, 137 F.2d 698, cert. denied, 320 U.S. 785, 64 S.Ct. 157, 88 L.Ed. 472, said: " * * * where an indigent confined in a mental hospital seeks habeas corpus it is more important to provide him with an independent psychiatric examination than to give him independent counsel." Again, the same court, speaking through Justice Burger, in Proctor v. Harris, 134 U.S.App.D.C. 109, 413 F.2d 383 (1969) stated: " * * * the fact remains that psychiatrists are physicians, not advocates; nevertheless, when they express views which are not in accord with those harbored by the confined patient or his counsel, there is a partisan tendency to

844

regard such an expert as an adversary. It is absurd to suggest that Government psychiatrists are 'uncooperative' in this context; we can readily take judicial notice that over a dozen years or more the medical views of these Government psychiatrists, as a whole, generally turned out to be more favorable to defendants than to prosecutors in verdicts of not guilty by reason of insanity. In observing this we do so to acknowledge, and not in any sense to challenge, their independent stance as professional people."

With relator having been confined for some seventeen years, it can not be denied that upon application he is entitled to a fundamentally fair judicial review of his mental condition. No semblance of due process could be claimed if petitioner were left alone to convince a court of his sanity when it is presumed the psychiatrists having custody of him will testify he is still insane. The hearing necessarily will become an adversary proceeding, and elementary fairness calls for at least an opportunity to rebut such professional testimony. Even if relator had funds to employ a psychiatrist of his own choosing, it could not be assumed that it would be concluded relator is now sane. All that money could have obtained would have been an "independent" examination, and relator, by virtue of the equal protection clause, is entitled to have an examination that is professionally independent of any influence by those having custodial control. An examination by a competent psychiatrist who is in a position to freely render his opinion based only on his professional training is constitutionally adequate because " * * * it is appropriate to observe that a State can, consistently with the Fourteenth Amendment, provide for differences so long as the result does not amount to a denial of due process or an 'invidious discrimination.' " Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811. The situation is comparable to the demand an accused be provided competent counsel, but not necessarily one of his own choosing. Clearly, the statute in question by providing a selection of one's choosing at his own expense is nothing more than a declaration of what would always have been a privilege of a person of means.

Having concluded that relator is not entitled to an examination by a psychiatrist of his own "choosing," relief as prayed for is not mandatory and mandamus will be denied. However, we deem it appropriate to make a preliminary comment on Operating Regulation No. 99, particularly in view of the fact the record does not reflect whether or not it was called to the attention of the trial court. As Justice Burger suggested in Proctor v. Harris, supra, we have no reason to doubt the professional integrity of all psychiatrists that may be working in the mental hospitals operated by the state. Absent a showing to the contrary, one would assume both honesty and competency. In the first instance, however, it is for the trial court to make the selection of a psychiatrist to make an "independent" examination. The judge, thereof, should convince himself that the court-appointed psychiatrist, despite any prior personal or professional relationship, can function in such a capacity.

Our alternative writ of mandamus is set aside and a peremptory writ is denied.

All concur.