## RUNNELS v. UNITED STATES.
### No. 10370.

Circuit Court of Appeals, Ninth Circuit.
Oct. 21, 1943.

Allen Spratlin, of Grand Coulee, Wash., and Joseph Wicks, of Okanogan, Wash., for appellant.

Wendell Berge, Asst. Atty. Gen., and Edward M. Connelly, U. S. Atty., and Harvey Erickson, Asst. U. S. Atty., both of Spokane, Wash., for appellee.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellant, a half-breed Indian ward of the United States, was convicted in the federal court for the eastern district of Washington of the murder of one Burns, a white man, and was sentenced to be hanged. From the judgment of conviction he appeals.

Prior to the trial appellant made certain incriminating admissions in response to questions put to him while under arrest, and his statements were transcribed from stenographic notes taken at the time. These admissions, in their transcribed form, were signed and sworn to by appellant and were later received in evidence over objection as Government's Exhibits "S" and "T." On the trial appellant took the stand and repudiated the confessions. The chief error urged here relates to the propriety of their admission in evidence.

Aside from the confessions, the showing made on behalf of the government was briefly as follows: On the evening of June 22, 1942, appellant and several other Indians, including a young Indian woman named Mary Gray, drove in an automobile from the town of Toppenish along a county road bordering on and lying partly within the Yakima Indian Reservation. Before leaving the town they picked up the white man, Burns, in order that he might purchase whiskey for the group. Considerable wine had previously been consumed by members of the party. Thereafter the automobile was stopped at the roadside, where there was further drinking. Burns and the girl Mary Gray, together with the driver of the car, occupied the front seat, the others being seated in the rear. Burns made advances toward Mary, placing his

hands on her bare legs and the more intimate parts of her body under her slacks; whereupon Mary protested and threatened to cut Burns with her knife if he did not desist. Burns persisted in his attentions, and Mary stabbed him once in the abdomen. Appellant thereupon struck Burns on the head, dragged him out of the automobile, and proceeded with incredible ferocity to stab and cut him a great many times. He then placed Burns' body in the car and ordered the driver to return to Toppenish, where he removed the body and laid it in the alley. Appellant, in the confessions referred to, admitted his participation in the slaying of Burns but undertook therein to incriminate some or all of the other members of the party.

On June 24 appellant was arrested by the marshal of the town of Toppenish, but was shortly released. Three days later he was again taken into custody without a warrant, this time by deputy sheriffs of Yakima County. He was thereafter confined in the county jail in a solitary cell—termed by some witnesses "the hole"—for a period of seventeen days, or until July 14, 1942. A complaint charging him with murder was filed on the latter date in the United States Commissioner's Court at Yakima. It was at intervals during this period of confinement that the admissions were obtained in response to repeated questionings. While the inquisition was in progress appellant was driven to the scene of the crime in company with a number of officers, including an assistant United States attorney. Prior to July 14 he had not been taken before a committing magistrate, no charge of crime had been lodged against him in any court, state or federal, he did not have the help of counsel and if he was told that he might have an attorney to advise him the record does not reveal the fact.

The trial judge inquired into the circumstances of the confessions and being of opinion that they had not been obtained by coercion he admitted them in evidence, and the question of their voluntary character was later submitted to the jury under appropriate instructions. At the time of the trial the cases of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. ——, and Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. ——, had not been decided.

While upon oral argument counsel for the government did not concede that the admission of the incriminating statements was error, the brief for the United States, as we read it, amounts to a confession of error. It is there said that the statements were obtained through collaboration of state and federal officers, and that although appellant was in the custody of the state authorities, "the Government does not disclaim responsibility for his detention." We may add that Government's Exhibit "S" purports on its face to be a statement made by appellant to Pryor, a special agent of the Federal Bureau of Investigation. The other incriminating statement, Government's Exhibit "T," recites that it was made in the presence, among others, of Special Indian Officer Brunskill, who acted as a peace officer in the administration of the affairs of the Yakima Agency. Thus while the record does not very clearly reveal the extent of the participation by the federal officers in the questioning of appellant, it is not possible for these officers, even if they were so inclined, to escape responsibility for an inquisition which continued over a period of many days before appellant was broken down.

The United States attorney suggested at the oral argument that it was not certainly known until the confession was obtained whether the killing had occurred on the Reservation, hence the government was in no position to file an accusation until after that time. We think this makes no difference. While Washington appears to have no statute on the subject, in that state, as elsewhere in this country, it is the duty of a peace officer who has effected an arrest without a warrant promptly to take the person arrested before a magistrate.[1] This directive is not something which the officer is free to comply with or ignore according as he may think the exigencies of the situation demand; it is a fundamental imperative designed to safeguard the individual in a free land against the arbitrary exercise of power.

The case clearly falls within the rule of McNabb v. United States and Anderson v. United States, supra. Consult also Gros v. United States, 9 Cir., 136 F.2d 878. The judgment of conviction must therefore be reversed.

Of the other questions presented we will notice but one. The trial court in-

---

[1] Housman v. Byrne, 1941, 9 Wash.2d 560, 115 P.2d 673; Ulvestad v. Dolphin, 1929, 152 Wash. 580, 589, 590, 278 P. 681.

structed the jury only on the crime of murder, distinguishing between the degrees thereof. An exception was duly taken to the failure to instruct on the included crime of manslaughter. Counsel for the government urge that as a matter of law this man was guilty of murder or of nothing. We do not agree. Under all the circumstances of the case we think the charge should have included an instruction on the subject of manslaughter.

Reversed and remanded for a new trial.