## UNITED STATES v. MITCHELL.

Nos. 514 and 515.   Argued March 27, 1944.—Decided April 24, 1944.

*Solicitor General Fahy,* with whom *Assistant Attorney General Tom C. Clark,* and *Messrs. Robert S. Erdahl, Paul A. Freund,* and *Jesse Climenko* were on the brief, for the United States.

*Mr. James J. Laughlin* for respondent.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

Under each of two indictments for housebreaking and larceny, the defendant Mitchell was separately tried and convicted, but his convictions were reversed by the Court of Appeals, 138 F. 2d 426, solely on the ground that the admission of testimony of Mitchell's oral confessions and of stolen property secured from his home through his consent was barred by our decision in *McNabb* v. *United*

*States*, 318 U. S. 332. In view of the importance to federal criminal justice of proper application of the *McNabb* doctrine, we brought the case here.

Practically the whole body of the law of evidence governing criminal trials in the federal courts has been judge-made. See *United States* v. *Reid*, 12 How. 361, and *Funk* v. *United States*, 290 U. S. 371. Naturally these evidentiary rules have not remained unchanged. They have adapted themselves to progressive notions of relevance in the pursuit of truth through adversary litigation, and have reflected dominant conceptions of standards appropriate for the effective and civilized administration of law. As this Court when making a new departure in this field took occasion to say a decade ago, "The public policy of one generation may not, under changed conditions, be the public policy of another." *Funk* v. *United States,* *supra* at 381. The *McNabb* decision was merely another expression of this historic tradition, whereby rules of evidence for criminal trials in the federal courts are made a part of living law and not treated as a mere collection of wooden rules in a game.

That case respected the policy underlying enactments of Congress as well as that of a massive body of state legislation which, whatever may be the minor variations of language, require that arresting officers shall with reasonable promptness bring arrested persons before a committing authority. Such legislation, we said in the *McNabb* case, "constitutes an important safeguard—not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society. For this procedural requirement checks resort to those reprehensible practices known as the 'third degree' which, though universally rejected as indefensible, still find their way into use. It aims to avoid all the evil im-

plications of secret interrogation of persons accused of crime. It reflects not a sentimental but a sturdy view of law enforcement. It outlaws easy but self-defeating ways in which brutality is substituted for brains as an instrument of crime detection. A statute carrying such purposes is expressive of a general legislative policy to which courts should not be heedless when appropriate situations call for its application." 318 U. S. at 344.

In the circumstances of the *McNabb* case we found such an appropriate situation, in that the defendants were illegally detained under aggravating circumstances: one of them was subjected to unremitting questioning by half a dozen police officers for five or six hours and the other two for two days. We held that "a conviction resting on evidence secured through such a flagrant disregard of the procedure which Congress has commanded cannot be allowed to stand without making the courts themselves accomplices in willful disobedience of law. Congress has not explicitly forbidden the use of evidence so procured. But to permit such evidence to be made the basis of a conviction in the federal courts would stultify the policy which Congress has enacted into law." 318 U. S. at 345. For like reasons it was held in the *Nardone* case that where wiretapping is prohibited by Congress the fruits of illegal wiretapping constitute illicit evidence and are therefore inadmissible. *Nardone* v. *United States,* 302 U. S. 379; 308 U. S. 338. Inexcusable detention for the purpose of illegally extracting evidence from an accused, and the successful extraction of such inculpatory statements by continuous questioning for many hours under psychological pressure, were the decisive features in the *McNabb* case which led us to rule that a conviction on such evidence could not stand.

We are dealing with the admissibility of evidence in criminal trials in the federal courts. Review by this

Court of state convictions presents a very different situation, confined as it is within very narrow limits. Our sole authority is to ascertain whether that which a state court permitted violated the basic safeguards of the Fourteenth Amendment. Therefore, in cases coming from the state courts in matters of this sort, we are concerned solely with determining whether a confession is the result of torture, physical or psychological, and not the offspring of reasoned choice. How difficult and often elusive an inquiry this implies, our decisions make manifest. And for the important relation between illegal incommunicado detention and "third-degree" practices, see IV, Report, National Commission on Law Observance and Enforcement (better known as the Wickersham Commission) (1931) pp. 4, 35 *et seq.*, 152; and the debates in the House of Commons on the Savidge case, 217 H. C. Deb. (5th ser. 1928) pp. 1216–1220,1303–1339, 1921–1931, and Inquiry in Regard to the Interrogation by the Police of Miss Savidge, Cmd. 3147 (1928); Report of the Royal Commission on Police Powers and Procedure, Cmd. 3297 (1929). But under the duty of formulating rules of evidence for federal prosecutions, we are not confined to the constitutional question of ascertaining when a confession comes of a free choice and when it is extorted by force, however subtly applied. See *United States* v. *Oppenheimer*, 242 U. S. 85, 88. The *McNabb* decision was an exercise of our duty to formulate policy appropriate for criminal trials in the federal courts. We adhere to that decision and to the views on which it was based. (For cases in which applications of the *McNabb* doctrine by circuit courts of appeals were left unchallenged by the Government, see *United States* v. *Haupt,* 136 F. 2d 661; *Gros* v. *United States,* 136 F. 2d 878; *Runnels* v. *United States,* 138 F. 2d 346.)

But the foundations for application of the *McNabb* doctrine are here totally lacking. Unlike the situation in other countries, see, for instance, §§ 25 and 26 of the Indian Evidence Act, 1872,[1] under the prevailing American criminal procedure, as was pointed out in the *McNabb* case, "The mere fact that a confession was made while in the custody of the police does not render it inadmissible." 318 U. S. at 346. Under the circumstances of this case, the trial courts were quite right in admitting, for the juries' judgment, the testimony relating to Mitchell's oral confessions as well as the property recovered as a result of his consent to a search of his home. As the issues come before us the facts are not in dispute and are quickly told.

In August and early October 1942, two houses in the District of Columbia were broken into and from each property was stolen. The trail of police investigation led to Mitchell who was taken into custody at his home at 7 o'clock in the evening on Monday, October 12, 1942, and driven by two police officers to the precinct station. Within a few minutes of his arrival at the police station, Mitchell admitted guilt, told the officers of various items of stolen property to be found in his home and consented to their going to his home to recover the property.[2] It is

---

[1] § 25: "No confession made to a Police officer, shall be proved as against a person accused of any offence."

§ 26: "No confession made by any person whilst he is in the custody of a Police officer, unless it be made in the immediate presence of a Magistrate, shall be proved as against such person."

[2] In both cases Mitchell denied the testimony of the officers that he had in fact made prompt and spontaneous confession and consent to the search of his home, and on the basis of such denial motions were made to exclude the evidence. The trial judges ruled that whether these statements were in fact made in the circumstances narrated were questions of fact for the juries. As such they were left to the

these admissions and that property which supported the convictions, and which were deemed by the court below to have been inadmissible. Obviously the circumstances of disclosure by Mitchell are wholly different from those which brought about the disclosures by the McNabbs. Here there was no disclosure induced by illegal detention, no evidence was obtained in violation of any legal rights, but instead the consent to a search of his home, the prompt acknowledgement by an accused of his guilt, and the subsequent rueing apparently of such spontaneous cooperation and concession of guilt.

But the circumstances of legality attending the making of these oral statements are nullified, it is suggested, by what followed. For not until eight days after the statements were made was Mitchell arraigned before a committing magistrate. Undoubtedly his detention during this period was illegal. The police explanation of this illegality is that Mitchell was kept in such custody without protest through a desire to aid the police in clearing up thirty housebreakings, the booty from which was found in his home. Illegality is illegality, and officers of the law should deem themselves special guardians of the law. But in any event, the illegality of Mitchell's detention does not retroactively change the circumstances under which he made the disclosures. These, we have seen, were not elicited through illegality. Their admission, therefore, would not be use by the Government of the fruits of wrongdoing by its officers. Being relevant, they could be excluded only as a punitive measure against unrelated wrongdoing by the police. Our duty in shaping rules of evidence relates to the propriety of admitting evidence.

---

juries, and we here accept their verdict as did the court below. Mitchell, it must be emphasized, merely denied that he made these statements and so did not contest the time of making them. While at the trial there was a claim by Mitchell that he was abused by the police officers, in the state of the record that issue is not here.

This power is not to be used as an indirect mode of disciplining misconduct.

*Judgment reversed.*

MR. JUSTICE DOUGLAS and MR. JUSTICE RUTLEDGE concur in the result.

MR. JUSTICE BLACK dissents.

MR. JUSTICE REED:

As I understand *McNabb* v. *United States,* 318 U. S. 332, as explained by the Court's opinion of today, the *McNabb* rule is that where there has been illegal detention of a prisoner, joined with other circumstances which are deemed by this Court to be contrary to proper conduct of federal prosecutions, the confession will not be admitted. Further, this refusal of admission is required even though the detention plus the conduct do not together amount to duress or coercion. If the above understanding is correct, it is for me a desirable modification of the *McNabb* case.

However, even as explained I do not agree that the rule works a wise change in federal procedure.

In my view detention without commitment is only one factor for consideration in reaching a conclusion as to whether or not a confession is voluntary. The juristic theory under which a confession should be admitted or barred is bottomed on the testimonial trustworthiness of the confession. If the confession is freely made without inducement or menace, it is admissible. If otherwise made, it is not, for if brought about by false promises or real threats, it has no weight as proper proof of guilt. *Wan* v. *United States,* 266 U. S. 1, 14; *Wilson* v. *United States,* 162 U. S. 613, 622; 3 Wigmore Evidence (1940 Ed.) § 882.

As the present record shows no evidence of such coercion, I concur in the result.