**TARKINGTON v. UNITED STATES.**

No. 6375.

United States Court of Appeals
Fourth Circuit.

Submitted Jan. 9, 1952.

Decided Jan. 28, 1952.

3. Universal Camera Corp. v. N, L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

Aubrey Whitt Tarkington, pro se, on brief.

No appearance for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This appeal is taken from an order which dismissed a motion, filed in the District Court on June 25, 1951, to vacate and set aside the judgment and sentence entered by the court on October 5, 1948 in the case of United States v. Aubrey Whitt Tarkington. The judgment was based upon a plea of guilty, filed with the advice of counsel, to an indictment wherein Tarkington and seven other defendants were charged with the robbery on September 21, 1948 of $68,-662, from the East Carolina Bank of Columbia, North Carolina, by force and violence and by putting in jeopardy, by the use of firearms, the lives of the cashier, the tellers and the bookkeepers of the bank. The sentence of the court was that Tarkington be committed to the custody of the Attorney General for imprisonment for the period of twenty-five years and fined $500, the defendant not to stand committed for non-payment of the fine. No appeal was taken from this judgment.

A second count of the indictment charged Tarkington and the other defendants with the transportation, in interstate commerce on September 20, 1948, of a stolen vehicle, to wit, a Hudson automobile from Norfolk in the State of Virginia, to Columbia in the State of North Carolina. This count was dismissed as to Tarkington for lack of evidence. The other defendants pleaded guilty to both counts and received substantial sentences. The leaders in the commission of the crime were Tarkington and Henry Everett Morrison, who were white men and who were joined by six colored men in the perpetration of the offense. Morrison received a sentence of twenty-three years and $500 fine on the first count, and a concurrent sentence of five years on the second count, and each

of the other defendants received a sentence of twenty years and a fine of $500 on the first count and a concurrent sentence of one year and one day on the second count of the indictment.

Tarkington's motion to vacate was based on the contention that the sentence as to him was invalid because his constitutional rights had been violated in the course of his arrest and prosecution in the following particulars:

(1) That in violation of Rule 5(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., the officers who arrested him on September 21, 1948, the day of the robbery, did not take him without unnecessary delay to the nearest available commissioner. After his arrest near Columbia, North Carolina, he was transferred thirty-four miles to Edenton, North Carolina, and lodged in jail until the next day when he was transferred to Plymouth, North Carolina, a distance of twenty-eight miles where he was given a preliminary hearing and committed for trial. He was then transferred to Wilson, North Carolina, a distance of one hundred and forty miles, where he was confined until October 5, 1948 when he was transferred to Washington, North Carolina, a distance of ninety miles where he was arraigned and sentenced. It is Tarkington's contention that he was transferred in this manner from jail to jail so as to prevent him from communicating with counsel and having the assistance and advice of counsel in the preparation of his defense.

(2) That the prisoner was not furnished with counsel at the preliminary hearing.

(3) That W. L. Whitley of Plymouth, North Carolina, an attorney at law, who appeared for him at the time of his arraignment, had been previously employed by his relatives and had promised to go to see him in jail and confer with him about his defense, but had failed to do so, so that the prisoner had no opportunity to confer with counsel until October 5, a short time before the plea of guilty was entered; and that at that time the attorney did not discuss the charge of robbery with the prisoner but only the charge contained in the second count of the indictment, and

that the plea of guilty to the charge of robbery was entered by the attorney contrary to the direction and without the consent of the prisoner.

(4) That in violation of Rule 10 of the Federal Rules of Criminal Procedure the indictment was not read nor was the substance of the charge stated at the arraignment nor was a copy of the indictment furnished to the prisoner before he was called upon to plead; and that in violation of Rule 11 of the Criminal Rules the judge, before accepting the plea of guilty, did not determine that the plea was made voluntarily and with understanding of the nature of the charge.

(5) That the judge failed to comply with the requirement of Rule 32(c) (1) of the Criminal Rules which provides that the probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation, unless the court otherwise directs.

(6) That the prisoner was not present at the scene of the crime on September 21, 1948, but was some miles distant at the time of the armed robbery of the bank, and was therefore not guilty of the crime charged in the first count of the indictment.

Judge Henderson, who imposed the sentence in this case, ceased to be a judge prior to the hearing of the motion to vacate, and the motion came on to be heard before Judge Gilliam. In making his determination he took into consideration the court records in the case, including the transcript of the proceedings at the time of the arraignment and the testimony of the attorney who appeared for the prisoner. Judge Gilliam had previously heard and dismissed separate motions of four co-defendants of Tarkington to vacate the sentences imposed upon them, and had also previously considered and passed upon a prior motion filed by Tarkington on July 26, 1949 to vacate the sentence imposed upon him. In this motion Tarkington contended that the sentence imposed upon him was invalid, because W. L. Whitley, the attorney employed by his family to represent him, was also appointed by the judge, together with another attorney, to

represent all the other defendants, and that the interests of the other defendants conflicted with those of Tarkington and hence his attorney was unable to give him the advice and assistance to which he was entitled. A hearing was had on this motion at which the testimony of Whitley was considered and the court, finding that Whitley was an experienced and competent attorney, and that there was no conflict in interest, dismissed the motion. No appeal was taken from this order.

The facts on which the judge based his findings and conclusions with respect to the pending motion are not in dispute. Tarkington was the organizer and leader of the group of eight men, consisting of two white men, Tarkington and Morrison, and six colored men, who met in Norfolk, Virginia in September, 1948 and planned the crime. Tarkington and Morrison were bus drivers employed by a transportation company. The colored men, with one exception, were ex-convicts, each of whom had served one or more terms of imprisonment for robbery, store breaking, larceny, &c. It was arranged that two automobiles should be used in robbing the bank of which one belonged to Tarkington and the other was stolen for the purpose. Tarkington furnished four pistols to his codefendants, a rope to be used if necessary to bind the employees of the bank, and a bag in which to carry away the loot. The night before the robbery the men proceeded in the two cars to a place in the country, a few miles from Columbia, and during the night the scene of the crime was surveyed. Since Tarkington was known in Columbia it was decided that he should remain in the country some miles from the town with his car in readiness for a get-away, and that Morrison and the others should rob the bank and come to meet Tarkington in the stolen car. In accordance with this plan the men entered the bank at about 11 o'clock on the morning of September 21, terrorized the employees and customers of the bank with the firearms and secured and escaped with the money. The stolen car, however, broke down before the robbers reached the rendezvous with Tarkington and, the pursuit being hot, they abandoned the car and took to the woods where all of them were captured and most of the money was recovered in the next twenty-four hours. Tarkington, having spent some time during the morning in hunting squirrels in the woods, was captured at a filling station during the day.

All of the defendants, including Tarkington, during the period of confinement between their arrest on September 21 and their arraignment on October 5, were interviewed by various federal and state officers, and each of the defendants admitted participation in the crime. There was no evidence and no contention that these confessions were obtained or influenced by threats or promises on the part of the officers. On October 5, after the arraignment and before the sentence, eye witnesses of the crime at the bank and officers who participated in the pursuit, arrest and examination of the prisoners testified at length as to the details of the crime; and one of the colored defendants at his own request described the formation and execution of the criminal conspiracy. These witnesses were subject to cross examination by Tarkington's attorney. The part played by Tarkington and the other defendants, as outlined above was described in this testimony.

Before sentence was pronounced, the prior criminal record of the defendants was put in evidence. It was shown that Tarkington had been convicted of forging United States Treasury checks and had been sentenced to one year and one day in prison in Florida on October 10, 1947 and had been paroled on February 25, 1948. It transpired during the examination of Tarkington's record that the probation officer had made some investigation of his case, but the report of the probation officer, if one was made, does not appear in the record.

At the hearing of the motion to vacate, the testimony showed that while Tarkington was in jail in Wilson, awaiting trial, Whitley was employed by Tarkington's mother to represent him. It was then arranged that she should visit her son and find out whether he was implicated in the crime since it was thought that he would

talk more frankly to her than to any one else. She complied and later reported that Tarkington admitted that he had gotten in with the wrong crowd. Whitley made an independent investigation, during which he talked with numerous persons about the affair, including eye witnesses of the crime and officers of the law familiar with the case. He came to the conclusion that the indictment against Tarkington could not be successfully defended and advised the mother that it was best for Tarkington to plead guilty and ask for leniency. Whitley did not make or break a promise to visit Tarkington in the jail. On the morning of the arraignment at the court house at Washington, he conferred separately with Tarkington and also with Tarkington and the other defendants, and it was decided and thoroughly understood by Tarkington and each of the others that they should all plead guilty. Tarkington made no objection to this decision. After the plea of guilty was entered Whitley participated in the examination of the witnesses for the government and produced certain other witnesses who testified about Tarkington's prior good reputation. Whitley also presented an argument to the court in Tarkington's behalf.

■ The essential fact to be derived from this recital is that the guilt of the prisoner was established by a plea of guilty which was entered voluntarily and with the advice of counsel. The contentions of the appellant to the contrary are not supported but are disproved by undisputed testimony. He was not secreted in jail and kept incommunicado from his family or his attorney, and he was not subjected to pressure or threats which led him to confess the crime during the period between his arrest and his arraignment. The plea of guilty was not entered against his will and consent but with understanding of the nature of the charge and upon the advice and with the assistance of an experienced attorney who thereupon presented to the court the prisoner's side of the case.

The neglect to observe the provisions of the federal rules of criminal procedure, such as the failure to take the prisoner without unnecessary delay to the nearest commissioner after his arrest, or to furnish the prisoner with a copy of the indictment, must be weighed within the framework of these circumstances. The case differs materially from McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, where disregard of the prisoner's right to be taken promptly to a United States Commissioner after arrest, and the secretion of the prisoner, without counsel, from contact with relatives or friends, rendered inadmissible in evidence confessions obtained from the prisoner by the pressure of long continued and repeated questioning during confinement. It was the combination of these circumstances which invalidated the sentence of the trial court rather than the mere failure to observe the strict requirements of the statute, as was later explained in United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140.

■ Accordingly the federal courts have held that the mere fact that the accused was detained without being taken before a committing authority with reasonable promptness does not void a conviction based upon competent evidence and does not deprive the court of jurisdiction to accept a voluntary plea of guilty and impose sentence thereon. See Blood v. Hunter, 10 Cir., 150 F.2d 640, 641, where it was said: "The proper application of the McNabb doctrine was demonstrated in United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 897, 88 L.Ed. 1140, in which it was emphasized that the vice at which the McNabb case was directed was 'inexcusable detention for the purpose of illegally extracting evidence from an accused, and the successful extraction of such inculpatory statements by continuous questioning for many hours under psychological pressure,' and that a conviction thus obtained could not stand. But the mere fact that the accused was illegally detained in violation of 18 U.S.C.A. § 595, does not of itself void a conviction based upon competent evidence. It was pointed out in the McNabb case (318 U.S. 332, 63 S.Ct. 615), that 'the mere fact that a confession was made while in the custody of the police

does not render it inadmissible,' and while it is the duty of arresting officers to obey the mandate of the law which requires them to bring the accused before a committing authority with reasonable promptness and failure to observe the spirit of such admonition may constitute 'inexcusable detention for the purpose of illegally extracting evidence,' yet the mere failure to observe the statutory mandate does not standing alone deprive the sentencing court of jurisdictional authority to accept a voluntary plea of guilty and to impose a lawful sentence on such plea." See also Redmon v. Squier, 9 Cir., 162 F.2d 195; Newman v. United States, D.C.Cir., 184 F.2d 275.

■ It is equally clear that the jurisdiction of the court to impose the sentence was not lost by the failure of the record to show that there was a pre-sentence investigation and report to the court before the imposition of the sentence, as prescribed in Rule 32(c) (1) of the Criminal Rules. The evidence indicates, as pointed out above, that the probation officer had made some investigation of the case and that through his investigation or in some other way the prior record of the prisoner had been examined. Furthermore, the attorney for the prisoner had himself made an investigation and presented to the court such facts as it was to the interest of the prisoner to disclose.

■ It is also obvious that there is no merit in the contention that the conviction was invalidated because Tarkington was not physically present at the bank when the robbery took place. The distinction between principals and accessories before the fact has been abolished by the provisions of the Federal Criminal Code, 18 U.S.C.A. § 2, that "whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal." Even if the contention of the appellant in this respect were raised in an appeal from a conviction rather than a motion to invalidate the sentence on constitutional grounds, it could not prevail.

The order of the District court is affirmed.