**Charles EDWARDS, Appellant,**

v.

**William C. HOLMAN, Acting Warden of Kilby Prison, State of Alabama, Appellee.**

No. 21557.

United States Court of Appeals
Fifth Circuit.

Feb. 9, 1965.

Rehearing Denied March 17, 1965.

Charles R. Crowder, Birmingham, Ala., for appellant.

Richmond M. Flowers, Atty. Gen., John C. Tyson, III, Asst. Atty. Gen., Montgomery, Ala., for appellee.

Before RIVES, WISDOM and BELL, Circuit Judges.

RIVES, Circuit Judge:

Edwards was tried in the Circuit Court of Shelby County, Alabama, on April 27, 1957, convicted of first degree murder and sentenced to life imprisonment. He did not appeal from the judgment of conviction. After serving nearly five years, Edwards filed a petition for writ of error coram nobis in the court in which he was convicted. The court appointed counsel to represent the petitioner and ordered Edwards brought to the Shelby County Jail in order that he and his court-appointed counsel might have an opportunity to confer and prepare for the hearing. Thereafter the court denied the application, stating:

"On this hearing only testimony was submitted to the court by witnesses who testified at the main trial of this case. No facts were brought to the knowledge of the Court, which were not previously known, nor in the trial of this case which would have prevented the rendition of the judgment as rendered in the case— no facts were presented such as would have prevented a conviction on the trial of the case.

"It is, therefore, the judgment of the Court that the application for writ of error coram nobis is not well taken."

Twenty days after that order, Edwards filed a petition for writ of habeas corpus in the Circuit Court of Montgomery County, Alabama. There was another full hearing following which the court denied the petition for habeas corpus. That judgment and the judgment denying coram nobis were both affirmed by the Supreme Court of Alabama on the same day, February 28, 1963.[1] In the coram nobis proceeding certiorari was denied by the Supreme Court of the United States.[2] Edwards then filed the present petition for habeas corpus in the United States District Court.

The court appointed able counsel to represent Edwards. Since findings of fact and conclusions of law had not been made in the State coram nobis proceeding, the federal district court granted a full evidentiary hearing.[3] The issues as framed in a formal pretrial order and as decided by the court were:

"1. Whether or not petitioner Edwards was denied the right and opportunity to secure and have counsel of his own choosing during each essential stage of the proceeding in the Circuit Court of Shelby County, Alabama, in criminal case No. 8693, which proceeding terminated in his being found guilty of murder in the first degree, with punishment fixed at life imprisonment in the penitentiary of the State of Alabama;

"2. Whether or not the State of Alabama, during the course of the prosecution in Shelby County, Alabama, in said criminal case, 8693, acting through any of its officers or agents, coerced from petitioner Edwards a confession through the use of cruel and inhuman treatment or threats;

"3. Whether or not the State authorities, acting through the officials of Shelby County, Alabama, denied to petitioner Edwards the right and opportunity to subpoena and secure witnesses in criminal case No. 8693; and

"4. Whether or not the State authorities, acting through the officials of Shelby County, Alabama, denied petitioner Edwards an adequate time and opportunity to prepare his defense in criminal case 8693."

1. Edwards v. State of Alabama, 274 Ala. 561, 150 So.2d 709; Edwards v. State of Alabama, 274 Ala. 569, 150 So.2d 710.

2. Edwards v. Alabama, 1963, 375 U.S. 882, 84 S.Ct. 152, 11 L.Ed.2d 112.

3. Citing, Townsend v. Sain, 1963, 372 U.S. 293, 314, 83 S.Ct. 745, 9 L.Ed.2d 770.

Upon the hearing, the petitioner Edwards testified in his own behalf, and the respondent introduced the deposition of the State judge who presided at Edwards' trial for murder and the testimony of eight witnesses *ore tenus*. The district court entered full findings of fact and conclusions of law comprising some five pages of the typed record, and denied the petition for habeas corpus.

Upon appeal, this Court appointed different counsel to whom we are indebted for an unusually vigorous and able presentation of the issues in behalf of Edwards. Each of the questions decided in the district court against Edwards was based upon the court's findings of fact which cannot be set aside as clearly erroneous.[4] Indeed after a careful study of the record, we are in full agreement with those findings.

Resourceful counsel, however, by putting a different gloss upon the first issue, present as a question of law—the contention that under Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, Edwards should have been provided "the assistance of counsel" as soon as he became a suspect in the murder case. The state court had appointed counsel after the indictment was returned but prior to arraignment. Understanding and consideration of this issue require a brief statement of some of the essential facts.

Edwards had previous convictions for "violation of prohibition law" and for "white slavery." He was arrested in Jefferson County, Alabama, in October 1956 on a warrant charging him with burglary. He was held in the jail at Birmingham for two weeks, during which time he was questioned about various burglaries of which he was suspected. The interrogation was extensive. Tom Ellison, a criminal investigator for the sheriff's office, testified that he was with Edwards as much as sixteen hours a day "for a purpose." However, Edwards himself testified:

"Q. What type of treatment did you receive while you were in the Birmingham jail?

"A. Good treatment."

Edwards further testified:

"We stayed in jail a week before they ever commenced to question about a murder in Birmingham."

As to the reason for Edwards removal from Jefferson County to adjacent Shelby County, Tom Ellison testified:

"THE COURT: What prompted you to take him from Jefferson County to Shelby County?

"WITNESS: Well, most of the burglaries that he had admitted that he was involved in was— were in Shelby County.

"THE COURT: I take it, then, that he admitted being involved in the murders prior to the time he was transported to Shelby County?

"WITNESS: He hadn't admitted it; no, sir.

"THE COURT: All right. Had you interrogated him about them—

"WITNESS: Yes, sir.

"THE COURT: —before you transported him to Shelby County?

"WITNESS: Yes, sir.

"THE COURT: Did you take him to the cemetery where the victim or victims were buried on the way from Birmingham to Columbiana?

"WITNESS: Not that I recall, but I wouldn't—wouldn't say, it has been so long, we—we could —it could have been possible, but I don't recall.

"THE COURT: Did you or anyone in your presence threaten to chain him out in the cemetery?

"WITNESS: Threaten to chain him in—

---

4. See Rule 52(a), F.R.Civ.P.; Rushing v. Wilkinson, 5 Cir. 1959, 272 F.2d 633.

"THE COURT: Or handcuff him?

"WITNESS: No, sir; no, sir. And it is my opinion that we—we didn't—well, we may have passed by the cemetery, but I don't—don't believe we carried him in the cemetery, but we could have. I just don't have any memory of it at the time, but I certainly deny that, we didn't threaten to chain him in any cemetery."

Edwards had testified:

"Well, they brought me—they took me out of Birmingham jail at twelve o'clock one day, took me to the City jail and locked me up to dark, when they left, Tom Ellison and another deputy left the City jail with me a little after dark, they brought me over there to that graveyard where that woman had been buried, they said it was a graveyard there, anyhow, they stopped there and was going to handcuff me out there. And a car pulled up behind them, they carried me on down to the Columbiana jail and jumped on me."

Tom Ellison testified (and his testimony was not disputed) that while Edwards was in Birmingham jail he was advised of his rights to remain silent, to consult an attorney, and that any statement he made could be used against him.[5]

After arrival at the Shelby County jail, Edwards was questioned about the murders.[6] There was no finding as to

---

5. "Q. How long after his arrest was he allowed to see anyone?

"A. I asked Charlie several times, I stayed with him I guess some sixteen hours a day, seven days a week for several weeks in the Birmingham county jail, and asked him several times if he would like to consult an attorney.

"Q. That was in the Birmingham jail?

"A. That was in Birmingham; yes, sir.

"Q. And you stayed with him sixteen—approximately sixteen hours a day for—

"A. Sixteen hours a day.

"Q. For seven days or two weeks?

"A. Seven days a week for several weeks. During that time I gave him cigarettes, would go to the kitchen in the jail and bring him coffee.

"Q. While you were with him the sixteen or seventeen hours a day for several weeks, what was your discussion with him?

"A. I was just—first talking to Charlie about his activities during the week of the Faulkner murder, and he related to me where he and Inez went on Monday, and he admitted several burglaries that I didn't have knowledge of at all at the time, and then on this particular Friday, of course, he didn't know at the time he was a suspect in the case.

"Q. Uh, huh.

"A. He said on this particular Friday, he drew me a map which I have—still have in my possession that I don't have any personal knowledge of this location he was describing of the route that they took on this particular Friday leaving Birmingham about eleven thirty going by way of—out 31 South to Alabaster.

"Q. In other words, what your discussion was, were you attempting to obtain from him a confession or information regarding this murder?

"A. Information regarding this incident—

"Q. Uh, huh.

"A. —yes, sir.

"Q. Uh, huh; and you questioned him continually during this period of time?

"A. Well, it wasn't necessarily questioning, just more or less talking, and he was telling me about the different places he had burglarized.

"Q. You were there for a purpose, wasn't you, sir?

"A. Pardon?

"Q. You were there for a purpose; you were there with him sixteen hours a day for a purpose?

"A. Yes, sir; yes, sir.

"Q. And—and what was that purpose?

"A. Just learning in detail of his—where he had been the week that this—

"Q. Anything he would have told you could have been used against him, would it not, or would you have used it against him?

"A. Yes, sir; yes, sir; he was informed of that."

6. Apparently that was after the evening meal. As testified by Hugh Sims, the Sheriff of Shelby County:

"THE COURT: Well, from the time you—what time did you first start questioning him?

"WITNESS: Well, it was after we had eaten—eaten and so I would say in the

the exact period of questioning prior to Edwards' oral confession. The estimates of various witnesses ranged from forty-five minutes to four hours. Two hours seems to be the most frequently stated time. At the time of his confession the prime suspect of the murder was his woman companion, Inez Able. As testified by Sheriff Sims:

"WITNESS: Actually, when Charlie made this confession, I didn't believe it, and that is why we made the arrangements that he had to go and point these things out in this house. As I say, my—my leads had actually led to the other party of the two, and I believed then, and I still believe, and I am under oath, that the other party was the agitator and the leader in this.

"THE COURT: That was the woman?

"WITNESS: That was the woman. And I—I have told Charlie the night we carried him out there that, 'I don't—I want you to be sure, now, don't you do something for Inez Able.' Then we—

"THE COURT: What did he say to that?

"WITNESS: He said, 'Well, got to get it off my conscience.' "

After Edwards had orally confessed, he was taken to the scene of the murders where he gave further details. He was then taken back to the jail where his statement was taken down and signed. Over objection, that statement was introduced in evidence at his trial.

No preliminary trial was ever conducted, nor was Edwards ever carried before a committing magistrate. Edwards was not advised by an attorney until after his indictment on April 10, 1957. The admissibility of Edwards' confession, however, was not affected by his subsequent detention before his indictment.[7] The federal rule requiring an arrested person to be taken without unnecessary delay before a committing magistrate has no application to one arrested on a state charge and in the custody of state officers.[8]

The circumstances under and extent to which the Supreme Court has advanced the point where the criminal process shifts from investigatory to accusatory need not be restated, but can best be determined by a reading and study of Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. The present case is distinguishable from that holding in several particulars: (1) there the accused was a 22-year-old of Mexican extraction, while here Edwards had a number of previous convictions for crime; (2) there no one had advised the accused of his constitutional rights, while here Edwards had been so advised; (3) there "[p]etitioner had become the accused, and the purpose of the interrogation was to 'get him' to confess his guilt despite his constitutional right not to do so" (378 U.S. 485, 84 S.Ct. 1762), while here Edwards was no more than a suspect and not even the prime suspect; (4) there the accused had a lawyer with whom he requested an opportunity to consult and his request was denied, while

neighborhood of seven thirty or eight o'clock.
"THE COURT: At night?
"WITNESS: Yes, sir.
"THE COURT: And what time did—did he first admit participation in the murder for which he was later convicted?
"WITNESS: It must have—now, first—the first statement?
"THE COURT: I am not talking about ironing out the details or going into that, I am talking about the first time after you started questioning him, what time was it, approximately, that you say he admitted it?

"WITNESS: As stated earlier, at the time he made the statement he was having a cup of coffee, and—but not over an hour, thirty—
"THE COURT: Not over—
"WITNESS: Well, forty-five minutes to an hour from the time we started."

7. United States v. Mitchell, 1944, 322 U.S. 65, 70, 64 S.Ct. 896, 88 L.Ed. 1140.

8. See Rule 5(a), F.R.Crim.P.; McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Swift v. United States, 10 Cir. 1963, 314 F.2d 860, 862.

here it does not appear that Edwards requested or was denied assistance of counsel prior to his confession.

We find no error in the record and the judgment is

Affirmed.

ON PETITION FOR REHEARING

PER CURIAM:

Consideration by each of the Circuit Judges in active service of whether to order a rehearing en banc has been requested by the appellant, but has not been initiated by any Circuit Judge. No formal order as to en banc rehearing is therefore entered. See Rule 25a, Fifth Circuit.

The petition for rehearing filed by the appellant is hereby

Denied.