PEOPLE *v.* WILLIAM TURNER
PEOPLE *v.* KENDRICK

1. INFORMATION — AMENDED INFORMATION — DIFFERENT OFFENSE CHARGED — MURDER.

An amendment to an information which differed from the original information only by the addition of the words "while in the perpetration or attempted perpetration of a robbery" to the original words "feloniously, willfully and of their malice aforethought, did kill and murder" did not effectuate a change of the charge from second-degree murder to first-degree murder where both informations cited the first-degree-murder statute and where the defendant was aware of the crime with which he was charged (MCLA §§ 750.316, 767.57).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur 2d, Indictments and Informations § 200 *et seq.*
[2, 5–7] 29 Am Jur 2d, Evidence § 547.
Admissibility of confession as affected by delay in arraignment of prisoner. 19 ALR2d 1331.
[3] 29 Am Jur 2d, Evidence § 739.
Use in criminal case of testimony given on former trial, or preliminary examination by witness not available at present trial. 159 ALR 1240.
[4] 53 Am Jur, Trial §§ 489, 506.

2. HOMICIDE—VOLUNTARINESS OF CONFESSION—DELAY IN ARRAIGN-
MENT.

   The defendant's confession to first-degree murder was not
   rendered involuntary on the ground that it was the product
   of a six-day delay between the defendant's arrest and his
   arraignment where the defendant confessed to a police officer
   and later to an assistant prosecuting attorney within a few
   hours after his arrest.

3. WITNESSES—USE OF TRANSCRIPT OF TESTIMONY FROM FORMER
TRIAL.

   Allowing the people, in a criminal prosecution for first-degree
   murder, to use the transcript of the testimony of two witnesses,
   given at an earlier trial of the same defendant for the same
   offense, was not reversible error where the prosecutor's office
   and the police department had tried to locate the witnesses
   but were unable to find them (MCLA § 768.26).

4. CRIMINAL LAW — HOMICIDE — EVIDENCE — CONFESSIONS OF CO-
PARTICIPANTS — CURATIVE INSTRUCTIONS TO JURY.

   Allowing the prosecuting attorney to state, during final argument
   in a criminal trial for murder, that a police officer, who had
   testified at a previous trial of the same defendant for the
   same offense and whose testimony had been read into evidence
   in the present trial, had testified that two other participants
   in the charged offense had confessed and had implicated the
   defendant was not reversible error where the trial judge im-
   mediately instructed the jury to disregard the improper
   remark of the prosecuting attorney (MCLA § 769.26).

5. CRIMINAL LAW—CONFESSIONS—VOLUNTARINESS—FAILURE TO AR-
RAIGN BEFORE CONFESSION GIVEN.

   Failure to have the defendant arraigned before a confession was
   given did not render the confession involuntary where the con-
   fession was given nine or ten hours after the defendant's
   arrest, where the delay in the arraignment can be attributed to
   the investigation of defendant's accomplices, the questioning
   of witnesses, and the conducting of a lineup, and where there
   was no connection between the nine or ten hour delay and the
   voluntary nature of the confession.

6. CRIMINAL LAW—CONFESSIONS—VOLUNTARINESS—DELAY IN AR-
RAIGNMENT AFTER CONFESSION MADE.

   A delay of seven days between defendant's arrest and his ar-
   raignment did not render a confession involuntary where the
   confession was made nine or ten hours after the defendant's

arrest because the seven-day delay in arraignment did not occur for the purpose of coercing a confession.

7. Criminal Law—Confessions—Voluntariness—Delay in Arraignment.

The test as to whether a delay between the arrest and the arraignment of a defendant renders a confession given during that delay involuntary is whether the detention had been used to coerce a confession, not the reasonableness of the length of the detention; mere delay is not sufficient to render a confession involuntary.

Appeal from Recorder's Court of Detroit, Joseph A. Gillis, J. Submitted Division 1 April 13, 1970, at Detroit. (Docket No. 7,316.) Decided September 30, 1970. Leave to appeal denied as to Turner December 2, 1970. 384 Mich 786.

William V. Turner was convicted of first-degree murder. Andrew Kendrick was convicted of second-degree murder. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Armand D. Bove,* for defendant William V. Turner on appeal.

Andrew Kendrick, *in propria persona* on appeal.

Before: Lesinski, C. J., and Quinn and O'Hara,* JJ.

O'Hara, J. On the morning of May 21, 1958, an elderly tailor was robbed in his store in the City of

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Detroit. During the course of the robbery the tailor was struck on the head with a lead pipe. He died from this injury later that day. The robbers fled the building when a customer arrived a short time later. A number of witnesses linked three men as having been together in the immediate vicinity both prior to the robbery and shortly thereafter. These men were identified as Robert Brown, William Turner, and Andrew Kendrick. The Detroit police arrested these men within an hour or two of the robbery. Subsequent to these arrests, several questioning sessions were conducted both of the defendants and of the witnesses. At least one line-up was also conducted.

At approximately 1 p.m. on May 21, 1958, defendant Turner confessed. At approximately 9:30 p.m. that same day Kendrick confessed. These initial confessions were made informally to members of the police department.

A formal confession by Turner was given to a member of the prosecuting attorney's staff at approximately 1:30 p.m. on May 21. A member of the prosecutor's staff took a formal statement from defendant Kendrick on May 22.

On May 27, 1958, the three defendants were arraigned.

The defendants were tried in December 1958 in a joint trial. During the course of this first trial both the formal confessions and the initial informal statements of Kendrick and Turner were admitted into evidence. Testimony was given by witnesses who had seen the defendants in the area at the time of the robbery. The jury found all defendants guilty of murder in the first degree.[1] The late Judge Gillis of the Recorder's Court for the City of

---

[1] MCLA § 750.316 (Stat Ann 1954 Rev § 28.548).

Detroit sentenced the defendants to life imprisonment.

After sentencing, a series of appellate maneuvers were conducted resulting in this court ordering a *Walker* hearing for Turner and Kendrick.[2] A lengthy (three volumes) hearing was conducted before Judge Gillis's successor and son, Judge Joseph A. Gillis, Jr., in April 1967. Judge J. A. Gillis, Jr., determined that the confessions were voluntarily made and thus admissible.

Subsequent to that determination, Judge Gillis, nevertheless, ordered new trials for Kendrick and Turner.[3] They received separate jury trials before Judge Gillis in December 1968 and January 1969. Both defendants were represented by counsel. As in the initial trial, both men were charged with felony-murder.

During the trial of defendant Kendrick, testimony given by four witnesses at the first trial was read into the record because these witnesses were unavailable. Testimony of two of these witnesses, plus two others, was also read into evidence at defendant Turner's trial. The testimony read into evidence against both defendants was that of two ladies who had seen the defendants in the vicinity of the robbery just prior to and immediately after its occurrence.

Again jury convictions were returned. The jury returned a verdict of guilty of murder in the second degree against defendant Kendrick. Turner's jury found him guilty of murder in the first degree.

Appellate counsel was appointed for both men. However, defendant Kendrick quickly became dis-

---

[2] During the intervening nine years, Robert Brown died. "(The Court was so informed when this decision was written. It has since learned that Robert Brown did not die.)"

[3] The record is unclear regarding the reason supporting this decision.

satisfied with counsel, discharged him and has proceeded *in propria persona.*

On appeal, the defendants have raised several issues. Because they are not always similar, they will be discussed separately.

## I. *Defendant Turner*

On the day of the second trial, January 13, 1969, defense counsel and defendant were informed that the information had been amended to include the phrase "while in the perpetration or attempted perpetration of a robbery." Defendant charges that this amendment was contrary to the law and in violation of his rights because it charged him with a crime more severe, felony-murder, which is first-degree murder, than that with which he was originally charged, second-degree murder.

The original information, issued in 1958, charged that defendants Turner and Kendrick "feloniously, wilfully and of their malice aforethought, did kill and murder one Jacob Kogan." The amended information, issued in 1969, differed from the original only in that it included the phrase, "while in the perpetration or attempted perpetration of a robbery."

Defendant alleges that the original information charged murder in the second degree. Defendant thus construes the amendment to effectuate a charge of a different offense with greater punishment.

Turner's contention is without merit. Both informations cited the first-degree murder statute. MCLA § 750.316 (Stat Ann 1954 Rev § 28.548). Such a reference by section numbers is expressly authorized by MCLA § 767.57 (Stat Ann 1954 Rev § 28.997).

"In pleading a statute or a right derived therefrom it is sufficient to refer to the statute by its

title, or in any other manner which identifies the statute and the court must thereupon take judicial notice thereof."

Furthermore, the record establishes beyond a doubt that defendant Turner was aware of the crime with which he was charged. At the first trial, Turner was convicted of first-degree murder. It was again noted at the *Walker* hearing that the charge was murder in the first degree.

In addition, defendant challenges certain confessions which he made on the ground that they were made during a period of illegal detention. *People* v. *Hamilton* (1960), 359 Mich 410. A *Walker* hearing was held in April 1967 for the purpose of determining the voluntariness of the confessions. At that hearing, testimony was offered to the effect that defendant confessed to a police officer and later to an assistant prosecuting attorney, both confessions being made within a few hours after his arrest. It does not appear from the record that there was any detention "used to coerce a confession." *People* v. *Farmer* (1968), 380 Mich 198, 205. The fact that defendant was not arraigned until six days after his arrest does not vitiate a confession made so shortly after arrest.

"The duty enjoined upon arresting officers to arraign 'without unnecessary delay' indicates that the command does not call for mechanical or automatic obedience. Circumstances may justify a brief delay between arrest and arraignment, as for instance where the story volunteered by the accused is susceptible of quick verification to third parties. But the delay must not be of a nature to give opportunity for the extraction of a confession." *Farmer, supra,* p 206.

Applying this principle to the present case, reversible error did not occur. The confession was

not the product of an unduly lengthy delay in arraignment. The principle against delay in arraignment for the purpose of securing a confession was not violated.[4] The finding of the trial court at the *Walker* hearing that defendant's confession was voluntary, is not "clearly erroneous" and must, therefore, be affirmed. *People* v. *Walker* (1967), 6 Mich App 600.

Defendant Turner's final objection is to the use of a transcript from the first trial. During the second trial the transcript of testimony of two witnesses, who appeared at the first trial, was read into evidence. The record establishes that the prosecutor's office, as well as the police department, went to some length to try to locate these two witnesses. However, their efforts were of no avail. Defendant suggests that the testimony of these witnesses was prejudicial because it related extensively to the activities of his accomplices. He argues that the jury could have inferred, from the criminal activities of his accomplices, criminal activity on his own part.

The use of the transcript of testimony taken at a prior trial is permitted by statute:

"Testimony taken at an examination, preliminary hearing, *or at a former trial of the case,* or taken by deposition at the instance of the defendant, *may be used by the prosecution whenever the witness giving such testimony can not, for any reason, be produced at the trial,* or whenever the witness has, since giving such testimony become insane or otherwise mentally incapacitated to testify." MCLA § 768.26 (Stat Ann 1954 Rev § 28.1049). (Emphasis supplied.)

---

[4] Although the issue has not been raised, we also note that delay, absent a confession, does not constitute prejudicial error. *People* v. *Woody* (1970), 25 Mich App 627.

Reversible error did not occur in defendant
Turner's second trial.

## II. *Defendant Kendrick*

Defendant Kendrick has filed a brief in his own
behalf. He raises several issues which for the pur-
pose of this opinion have been consolidated.

He argues initially that the court committed
prejudicial error in admitting the confessions of his
co-defendants. At the first trial, Lieutenant Ware
testified that he had told the defendant that "his
two friends admitted this hold-up together." At
Kendrick's second trial, a transcript of Ware's testi-
mony at the first trial was read into evidence pur-
suant to a stipulation by defense counsel. The
prosecutor, in his closing argument in the second
trial, referred to this statement by saying, "Lieu-
tenant Ware said, 'Mr. Brown and Mr. Turner have
confessed and implicated you.' "

We quote the trial transcript:

"*Mr. Burke, (defense counsel)*: Your Honor
please, I have to object at this point. That's not
indicative.

"There is nothing in here that Ware says to
Kendrick that Turner and Brown confessed and
implicated him. That's not in the record. Here
it is, right here.

"*The Court*: The jury will recall the testimony
and give it such weight—recall the testimony as you
heard it and as you remember it, and any statement
by either Brown or Turner, of course, would not be
binding on Kendrick.

"Neither Brown nor Turner have testified nor
statements admitted by them.

"*Mr. Burke*: I am saying he has misquoted the
record.

"*Mr. Regnier (prosecuting attorney, continuing)*:
Ladies and gentlemen, if I misquoted the record, I

apologize. That is as I heard it. If I am mistaken, you will remember it because you heard the same thing I did. I'm sorry if I misquoted."

The immediate instructional ruling of the trial court cured any alleged error.

Kendrick's reliance on *Bruton* v. *United States* (1968), 391 US 123 (88 S Ct 1620, 20 L Ed 2d 476) for this complained error is misplaced. *Bruton* does not address itself to improper jury argument. The point is covered by the following holding:

"Assuming the argument by the prosecuting attorney to be improper we must, in order to reverse or grant a new trial, determine after an examination of the entire cause that it affirmatively appears that it has resulted in a miscarriage of justice. CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096). *People* v. *Keiswetter* (1967), 7 Mich App 334. This we cannot do because we agree with the trial judge's ruling that there was nothing in this incident which deprived defendant of a fair trial. No prejudicial error resulted." *People* v. *Green* (1967), 7 Mich App 346, 354.

Kendrick also urges, as did Turner, that a violation of the *Hamilton* rule occurred in his case which necessitates a finding that his confession is inadmissible.

Kendrick confessed at 9:30 p.m. of the day of his arrest. He had thus been in police custody for nine and one-half to ten hours before he confessed. However, he was not arraigned until seven days later. He argues that the failure to arraign him prior to his confession renders the confession inadmissible as a violation of *People* v. *Hamilton, supra.* Alternatively, Kendrick urges that the subsequent seven-day delay in his arraignment rendered the confession inadmissible.

There is no connection between the nine or ten hour delay and the voluntary nature of defendant's subsequent confession. This delay can be attributed to the investigation of defendant's accomplices, the questioning of witnesses, and the conducting of a lineup.

We must then determine whether the unfortunate six and one-half-day delay, subsequent to the obtaining of the confession, renders that confession inadmissible. A review of this issue requires that the reasoning behind the exclusion of statements made during prolonged detention be understood. The purpose of the exclusion is to preclude statements that are coerced.

"An unnecessary and so unlawful delay * * * *when done for prolonged interrogatory purposes* and without proven justification of the delay, renders involuntary and so inadmissible whatever confessional admissions the detained person may have made while so unlawfully detained." *People* v. *Hamilton* (1960), 359 Mich 410, 417. (Emphasis supplied.)

Thus, the mere fact of delay is not sufficient, standing alone to come within the prohibition.

"It is maintained that the detention of defendant for three days—72 hours—from the morning of January 11, 1958, to the morning of January 14, 1958, before arraignment was such a lengthy detention as to render the confession involuntary. While this Court has repeatedly condemned the practice of undue detention, *the test as to whether such a detention renders a confession involuntary is* not the reasonableness of the length of time a person is detained .but *whether the detention has been used to coerce a confession.* As was said in *United States* v. *Mitchell* (1943), 322 US 65, 70 (64 S Ct 896, 898; 88 L Ed 1140, 1143): '[T]here was no

disclosure induced by illegal detention.' " *People* v. *Farmer* (1968), 380 Mich 198, 205, 206. (Emphasis supplied.)

Applying this principle to the present case, reversible error did not occur. The confession occurred nine or ten hours after the arrest. Six and one-half-days of the seven-day delay occurred subsequent to the giving of the confession. This delay did not occur for the purpose of coercing the confession.

Defendant Kendrick also suggests that he was denied due process by the refusal of the trial judge to grant him a complete transcript. A close reading of the trial transcript establishes that the only hearing other than the trial itself was the *Walker* hearing. Kendrick received a transcript of the *Walker* hearing. The record does not establish the existence of a separate hearing during the course of the trial to establish the admissibility of Kendrick's formal statement to the prosecutor. Since the defendant received a transcript of the *Walker* hearing he was not prejudiced. *People* v. *Gorka* (1969), 381 Mich 515, 520.

The defendant also raises several other issues. We have examined them and find them without substance or merit.

Reversible error did not occur at the trial of either of these defendants. The verdicts of both trials are affirmed.

Affirmed.

All concurred.